THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LEON YOUNG, Defendant-Appellant.

Second District Nos. 83—1066, 84—372 cons.

Opinion filed July 15, 1985.—Rehearing denied October 1, 1985.

G. Joseph Weller and Mary K. Schick, both of State Appellate Defender's Office, of Elgin, for appellant.

Fred L. Foreman, State's Attorney, of Waukegan (Phyllis J. Perko and Raymond L. Beck, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE SCHNAKE delivered the opinion of the court:

Defendant, Leon Young, was convicted at a bench trial of rape, aggravated kidnaping, and unlawful restraint (Ill. Rev. Stat. 1981, ch. 38, pars. 11—1, 10—2(a)(3), 10—3) and was sentenced to 10 years' imprisonment. He appealed, and this court affirmed the conviction of rape, reversed the conviction of aggravated kidnaping, vacated the conviction of unlawful restraint, and remanded the cause for resentencing. *People v. Young* (1983), 115 Ill. App. 3d 455, 450 N.E.2d 947.

After our mandate was received by the circuit court, but prior to resentencing, defendant filed a petition for a new trial under the Post-Conviction Hearing Act. (Ill. Rev. Stat. 1981, ch. 38, par. 122—1 *et seq.*) The matter was assigned to Judge John L. Hughes who had presided over the original trial. Neither party objected to that assignment. The State subsequently moved to dismiss the petition without an evidentiary hearing on the ground that the issues raised therein had been considered and rejected on the direct appeal. The court granted the State's motion to dismiss and resentenced defendant to a

10-year term of imprisonment. Defendant filed a timely amended notice of appeal from the dismissal of his post-conviction petition and the sentence.

While that appeal was pending, defendant filed in the circuit court a motion to vacate the order dismissing his post-conviction petition. The motion was based on section 122—8 of the Code of Criminal Procedure of 1963, which became effective five days after the post-conviction petition was filed, and about one week before the hearing on the petition. Section 122—8 provides that "[a]ll proceedings under this Article [the Post-Conviction Hearing Act] shall be conducted and all petitions shall be considered by a judge who was not involved in the original proceeding which resulted in conviction." (Ill. Rev. Stat., 1984 Supp., ch. 38, par. 122—8.) Defendant's motion to vacate the order of dismissal was granted, and the matter was ultimately assigned to Judge Fred A. Geiger. The State again moved to dismiss the petition on the ground previously asserted. Judge Geiger granted the State's motion, and defendant filed a timely notice of appeal from that decision. The two appeals have been consolidated for review by this court.

■ Before we address the merits of the dismissal of defendant's post-conviction petition, we must decide which order of dismissal is properly before us, the order of Judge Hughes, or that of Judge Geiger. After Judge Hughes granted the State's motion to dismiss the post-conviction petition, defendant filed a timely amended notice of appeal. The proper filing of a notice of appeal causes the jurisdiction of the reviewing court to attach instanter and deprives the trial court of jurisdiction to reconsider the merits of the issues on appeal. (*People v. Turner* (1982), 111 Ill. App. 3d 358, 368, 443 N.E.2d 1167. See also *People v. Kleba* (1971), 1 Ill. App. 3d 563, 275 N.E.2d 174.) Accordingly, while the defendant's first appeal was pending, the trial court did not have jurisdiction to hear his motion to vacate the order dismissing his post-conviction petition. The proceedings which followed were null and void (*Bank of Viola v. Nestrick* (1981), 94 Ill. App. 3d 511, 514, 418 N.E.2d 515), and this case must be viewed as if the motion to vacate had not been filed. See *People v. Turner* (1982), 111 Ill. App. 3d 358, 368, 443 N.E.2d 1167.

Although the parties have not addressed this question here, there was some discussion in the trial court of that court's jurisdiction to hear defendant's motion to vacate the order of dismissal. This concerned the fact that more than 30 days had elapsed from entry of the order to filing of the motion to vacate (see generally *People v. Kaeding* (1983), 98 Ill. 2d 237, 456 N.E.2d 11), rather than the fact that a

notice of appeal had been filed during that time. Defendant argued, and the trial court apparently agreed, that the court had jurisdiction to hear the motion to vacate notwithstanding the passage of more than 30 days because under section 122—8 Judge Hughes lacked jurisdiction to consider the post-conviction petition, and because an order void for want of jurisdiction may be attacked at any time.

■ One of the problems with this argument is its premise that Judge Hughes did not have jurisdiction to consider defendant's post-conviction petition. Initially, we note that section 122—8 was, indeed, applicable to the proceedings before Judge Hughes even though the post-conviction petition was filed before the effective date of the statute because the hearing on the petition was held thereafter, and the statute relates to procedural matters, rather than substantive law. (*People v. Ruiz* (1985), 107 Ill. 2d 19.) It is also true that under section 122—8 defendant had a right to have his petition considered by another judge. Defendant, however, did not file a motion for substitution of judge. He proceeded without objection to a hearing before Judge Hughes. It has been held in similar contexts that a party can waive the issue of disqualification of a particular judge by proceeding without objection to a hearing before him. (See *People v. Bach* (1979), 74 Ill. App. 3d 893, 393 N.E.2d 563; *Sproul v. Springman* (1925), 316 Ill. 271, 147 N.E. 131.) We hold that defendant waived his rights under section 122—8, and that, therefore, the order of Judge Hughes dismissing defendant's post-conviction petition was not void for want of jurisdiction. When defendant filed his amended notice of appeal from that order, the trial court was divested of jurisdiction to reconsider it.[1] Accordingly, we shall consider the merits of defendant's appeal from the order of dismissal entered by Judge Hughes, but not the order of dismissal subsequently entered by Judge Geiger after the trial court had lost jurisdiction of the matter. See *People v. Turner* (1982), 111 Ill. App. 3d 358, 443 N.E.2d 1167.

The evidence presented at the original trial of this case was set forth in detail in our prior opinion (*People v. Young* (1983), 115 Ill. App. 3d 455, 450 N.E.2d 947), and it will not be reiterated here except as it relates to the disposition of the remaining issues.

In his post-conviction petition defendant raised numerous issues. On appeal he has pursued only one, *i.e.*, that he did not receive effec-

---

[1]We are aware that section 122—8 has been held to be unconstitutional by the circuit court of Knox County. (See *People v. Ruiz* (1985), 107 Ill. 2d 19.) Like our supreme court in *Ruiz*, we express no opinion on that issue. Clearly, if the statute is unconstitutional, it could have had no effect on the jurisdiction of Judge Hughes to hear defendant's post-conviction petition.

tive assistance of counsel at trial as a result of his attorney's failure to consult with him and others regarding an alibi defense, and to present such defense at trial. This issue was raised by defendant on direct appeal, and we considered it to be without merit. Generally, when a person convicted of a crime has taken a direct appeal on a complete record, the judgment of the reviewing court is *res judicata* as to all issues actually decided by the court, and all issues which could have been presented to the reviewing court, if not presented, are waived. *People v. Beckham* (1970), 46 Ill. 2d 569, 264 N.E.2d 149.

Defendant seeks to avoid this general rule first by arguing that he has new facts to support his claim that were outside the record on his direct appeal. It has been recognized that when a post-conviction claim is based on facts outside the record on direct appeal, *res judicata* does not bar consideration of the issue. (*People v. Mengedoht* (1980), 91 Ill. App. 3d 239, 414 N.E.2d 893.) As noted in our earlier opinion, defendant's trial attorney withdrew from this case after trial, and new counsel was substituted. The new attorney filed a post-trial motion raising the issue of the trial attorney's failure to develop and present an alibi defense. In support of that contention, an affidavit of an investigator retained by the defense was submitted. According to the affidavit, the investigator spoke with defendant's first-period gym teacher at school and was informed by him that defendant had been in class on the day in question, and that he (the teacher) had spoken with defendant at approximately 8:30 a.m. The affidavit also indicated that the investigator spoke with defendant's second-period teacher and was informed that defendant had reported to his second-period class at approximately 9:30 a.m. Both teachers told the investigator that neither defendant's trial attorney nor anyone on her behalf had discussed the case with them. The State submitted an affidavit of the second-period teacher to the effect that he did not see defendant prior to 9:35 a.m. In rejecting defendant's claim of ineffective assistance, we noted, among other things, that these facts did not establish an alibi for defendant. They established only that he had been seen in school at 8:30 a.m. and again at 9:35 a.m., but did not establish his whereabouts during the intervening time period, which is when the rape took place. We concluded that defendant, therefore, failed to show that his attorney's alleged incompetence prejudiced his defense.

■ Defendant maintains that at the hearing on his post-conviction petition, he was prepared to present testimony from the teachers, not included in the direct appeal, which would have established his whereabouts in the critical time period. The record of the hearing, however, does not support this claim. Defendant had subpoenaed vari-

ous witnesses, including the school teachers, to testify at the hearing. Defense counsel made an offer of proof regarding what these witnesses would testify. With respect to the school teachers, defense counsel stated:

"Mr. Jerdee and Mr. Mack [the teachers] being called to testify that they were never contacted by Alyce Browne [defendant's trial attorney] or any investigator from her office, pretrial, and to testify as to his [defendant's] presence in the high school *at 8:30 and at 9:35.*" (Emphasis added.)

Clearly, the teachers had nothing to say that had not already been considered by this court on direct appeal.

■ Defendant's second argument to avoid the doctrine of *res judicata* is that the standard for evaluating claims of ineffective assistance of counsel has changed sufficiently since our opinion on direct appeal was filed that fundamental fairness requires that we re-evaluate his claim. It has been recognized that fundamental fairness may require relaxation of the doctrine of *res judicata* where the basis of a defendant's post-conviction claim is predicated upon case law which developed after affirmance of his conviction on direct appeal. (*People v. Cowherd* (1983), 114 Ill. App. 3d 894, 449 N.E.2d 589. See also *People v. Ikerd* (1970), 47 Ill. 2d 211, 265 N.E.2d 120.) It is also true that in *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052, the United States Supreme Court developed a standard for evaluating claims of ineffective assistance of counsel which is phrased differently from the standard we applied on direct appeal. The standard we applied derives from *People v. Morris* (1954), 3 Ill. 2d 437, 121 N.E.2d 810, and requires a defendant to demonstrate "[1] actual incompetence [of counsel], as manifested in the performance of his or her duties as trial attorney, [2] which resulted in substantial prejudice to the defendant without which the outcome of trial would probably have been different." (*People v. Young* (1983), 115 Ill. App. 3d 455, 466, 450 N.E.2d 947.) In *Strickland* the court required a defendant to establish (1) "that counsel's representation fell below an objective standard of reasonableness" (466 U.S. 668, 688, 80 L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2065), and (2) "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (466 U.S. 668, 694, 80 L. Ed. 2d 674, 698, 104 S. Ct. 2052, 2068.) The court distinguished the showing of prejudice it required, *i.e.*, reasonable probability that the outcome would have been different, from what it referred to as "the strict outcome-determinative test" (466 U.S. 668, 697, 80 L. Ed. 2d 674, 699, 104 S. Ct. 2052, 2069), which would have required

a defendant to show that his attorney's deficient conduct "more likely than not altered the outcome in the case." (466 U.S. 668, 693, 80 L. Ed. 2d 674, 697, 104 S. Ct. 2052, 2068.) In *People v. Albanese* (1984), 104 Ill. 2d 504, 473 N.E.2d 1246, our supreme court adopted the *Strickland* standard for evaluating claims of ineffective assistance of counsel. We disagree, however, with defendant's contention that this change in the formulation of the standard is substantial enough to require re-evaluation of his claims.

In *Strickland* itself the United States Supreme Court addressed the question of whether fundamental fairness would require re-evaluation of claimed ineffective assistance of counsel rejected under prior tests as follows:

"A number of practical considerations are important for the application of the standards we have outlined. Most important, in adjudicating a claim of actual ineffectiveness of counsel, a court should keep in mind that the principles we have stated do not establish mechanical rules. Although those principles should guide the process of decision, the ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged. In every case the court should be concerned with whether, despite the strong presumption of reliability, the result of the particular proceeding is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results.

To the extent that this has already been the guiding inquiry in the lower courts, the standards articulated today do not require reconsideration of ineffectiveness claims rejected under different standards. Cf. *Trapnell v. United States*, 725 F.2d, at 153 (in several years of applying 'farce and mockery' standard along with 'reasonable competence' standard, court 'never found that the result of a case hinged on the choice of a particular standard'). In particular, the minor differences in the lower courts' precise formulations of the performance standard are insignificant: the different formulations are mere variations of the overarching reasonableness standard. With regard to the prejudice inquiry, only the strict outcome-determinative test, among the standards articulated in the lower courts, imposes a heavier burden on defendants than the tests laid down today. The difference, however, should alter the merit of an ineffectiveness claim only in the rarest case." (*Strickland v. Washington* (1984), 466 U.S. 668, 696-97, 80 L. Ed. 2d 674, 699, 104 S. Ct. 2052, 2069.)

We believe that the guiding inquiry in the application of the prior Illinois test was whether the result was unreliable as a result of a breakdown in the adversarial process. In *Albanese*, the case in which our supreme court adopted the *Strickland* test, the court stated that it did not foresee "that application of the *Strickland* rule will produce results that vary significantly" from those reached under the prior Illinois standard. (*People v. Albanese* (1984), 104 Ill. 2d 504, 526.) More recently, in *People v. Madej* (1985), 106 Ill. 2d 201, 215, 478 N.E.2d 392, the court stated that the *Strickland* standard "closely resembles" the prior Illinois test.

Defendant's argument that the difference between the tests is significant focuses on the prejudice component of the tests. He maintains that the prior Illinois standard included the strict outcome-determinative test rejected in *Strickland*, which would have required a defendant to show that his attorney's deficient conduct more likely than not altered the outcome. Since that standard places a heavier burden on defendants than the "reasonable probability" test adopted in *Strickland*, defendant maintains that re-evaluation of his claim is required. We do not believe that the prior Illinois standard included the strict outcome-determinative test. It required a demonstration of "substantial prejudice" resulting from counsel's incompetence, "without which the outcome of trial would probably have been different." (*People v. Young* (1983), 115 Ill. App. 3d 455, 466, 450 N.E.2d 947.) The prior Illinois test used the word "probably" where the *Strickland* rule has the term "reasonable probability." This distinction is not significant. In fact, our supreme court has used the language from the prior Illinois test in rejecting claims of ineffective assistance of counsel under the *Strickland* rule. In *People v. Del Vecchio* (1985), 105 Ill. 2d 414, 426, 475 N.E.2d 840, the court rejected a claim of ineffective assistance under the *Strickland* test on the basis that it was "unable to say that counsel's performance caused substantial prejudice to the defendant without which the result of the trial would probably have been different." In *People v. Mitchell* (1984), 105 Ill. 2d 1, 15, 473 N.E.2d 1270, the court, in rejecting such a claim stated:

> "After a review of the entire record, including the specific areas discussed above, we are not persuaded that different counsel would probably have produced a different result (*Strickland, Albanese*, [*People v.*] *Royse* [(1983), 99 Ill. 2d 163, 457 N.E.2d 1217]) and conclude that defendant has failed to sustain her burden of establishing a deprivation of effective assistance of counsel."

These cases indicate that the meaning of the word "probably" in the

prior Illinois standard is essentially the same as that of the term "reasonable probability" under *Strickland*, and that the prior Illinois standard did not include the strict outcome-determinative test.

In arguing to the contrary, defendant has cited the decision in *Albanese* in which our supreme court adopted the *Strickland* test. We can find nothing in that opinion indicating that the prior Illinois standard included the strict outcome-determinative test for establishing prejudice. In fact, a contrary conclusion is denoted. The court stated that the *Strickland* standard "appears to combine elements of both" the prior Illinois test and the Federal standard announced in *United States ex rel. Williams v. Twomey* (7th Cir. 1975), 510 F.2d 634, *cert. denied* (1975), 423 U.S. 876, 46 L. Ed. 2d 109, 96 S. Ct. 148. (*People v. Albanese* (1984), 104 Ill. 2d 504, 525.) The Federal test, however, did not include a prejudice component. Therefore, one of the elements of the Illinois test which our supreme court considered to be included in the *Strickland* standard was the prejudice component.

Although the precise formulation of the test we used to evaluate defendant's ineffective-assistance claim on direct appeal is different from that now in effect, the guiding inquiry and the substance of the two tests are essentially the same. Fundamental fairness does not require re-evaluation of defendant's claim.

Finally, although we do not base our decision on the following consideration, it must be remembered that at the original trial Sergeant Bullock testified that defendant admitted that he had walked with the complaining witness from the high school to the shed where the incident occurred. As we noted in our original opinion, "under these circumstances the presentation of alibi evidence may have made counsel a party to perjury." *People v. Young* (1983), 115 Ill. App. 3d 455, 468.

For the foregoing reasons, the judgment of the circuit court of Lake County dismissing defendant's post-conviction petition is affirmed.

Affirmed.

LINDBERG and UNVERZAGT, JJ., concur.