THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
LARRY E. DAVIS, Defendant-Appellant.

First District (3rd Division) No. 1—89—0651

Opinion filed September 12, 1990.

Darryl M. Bradford, Scott C. Tomassi, and K. Clark Shirle, both of Jenner & Block, of Chicago, for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Margaret M. Regan, Special Assistant State's Attorney, and Renee Goldfarb and James E. Fitzgerald, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE CERDA delivered the opinion of the court:

The defendant, Larry Davis, was convicted for armed robbery on June 13, 1979, following a bench trial and was sentenced to 12 years in the Illinois Department of Corrections. On direct appeal, this court affirmed the defendant's conviction. (*People v. Davis* (1981), 103 Ill. App. 3d 792, 431 N.E.2d 1210.) The defendant now appeals from the circuit court's dismissal of his petition for relief under the Post-Conviction Hearing Act (Ill. Rev. Stat. 1989, ch. 38, par. 122—2 *et seq.*). The petition alleged, *inter alia*, that: (1) the defendant was denied effective assistance of trial counsel; (2) a statement made by the defendant was erroneously admitted at trial in violation of *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602; and (3) the defendant was denied effective assistance of appellate counsel. After an evidentiary hearing, the trial court denied the defendant's petition for relief on the ground that he failed to show that his trial was reduced to a charade or a sham as a result of the alleged ineffective assistance of trial counsel. The trial court refused to consider the defendant's claims asserting a *Miranda* violation and ineffective assistance of appellate counsel. The remaining counts in the petition are not relevant to this appeal.

The evidence produced at the defendant's trial reveals the following. On the afternoon of July 26, 1978, three armed men robbed the Chicago Spring and Bumper Company, an automobile repair shop located at 4611 West Lake Street in Chicago. The complaining witness, Henry Jeffery, testified that he was seated at his desk with a customer named Renard Taylor. Jeffery and Taylor then walked into the garage area whereupon Jeffery noticed two men: one standing near a doorway and the other standing near a Coke machine. Jeffery identified the man standing near the Coke machine as the defendant. Jeffery testified that he was eight feet away from the defendant and observed him for approximately a minute and a half until he was distracted by some shouting behind him. Upon turning around, Jeffery saw two of his mechanics running and a third man holding a long-barreled gun. The defendant ordered Jeffery to lie down on the floor. Everyone else was ordered to do the same. The defendant then entered the office area and escorted Jeffery's secretary, Joyce Bell, into the garage area, where she too was ordered to lie down on the floor.

The defendant ordered a customer to give him money whereupon the customer pointed to Jeffery, telling the defendant that Jeffery was the owner. The defendant walked over to Jeffery and pointed a nickle-plated handgun at Jeffery's back and asked for the location of

the money. Jeffery told the defendant the money was in the office. The defendant then picked Jeffery off the ground, and they entered the office area, where the defendant took $200 from the cash register. The defendant then ordered Jeffery to give him all the money in his pockets. Jeffery testified that at this point, he noticed that the defendant had placed a nylon stocking over his head. The defendant had not been wearing the stocking when Jeffery first noticed him standing near the Coke machine. Jeffery stated, however, that he could see the defendant's face through the stocking. The other customers were forced to hand over their money to the defendant's accomplices. One of the robbers had a leather satchel in which they placed the money. The defendant and the second man exited through the front entrance and fled on foot. Jeffrey never saw how or where the third man departed.

On August 7, Jeffery viewed a lineup and identified the defendant. At trial, Jeffery was shown a photograph of the lineup and when asked if the man he identified in the lineup was the same person he pointed to in court, Jeffery replied "I think so." On cross-examination, Jeffery conceded that he was tentative when he identified the defendant at the lineup. He further admitted that he asked to see the lineup a second time and had to observe the participants from all sides before making an identification. During redirect, Jeffery explained in regard to the lineup that "I said there was no doubt in my mind that the number three man was the man but I felt I did not see his face long enough to say positive that that was the man." Jeffery further stated that after seeing the defendant in court, there was no doubt in his mind that the defendant was the gunman who robbed him.

Joyce Bell testified that she was working in the office when a man with a gun entered and asked her where the money was located. Bell responded that she had only been employed at the shop for two days and did not know where anything was located. The gunman then walked behind her, pointed his gun at her back, and told her to get on the floor in the garage area alongside everyone else. Bell identified the defendant in court as the gunman. Bell also viewed a lineup on August 7 during which she made a positive identification. Bell further testified that she noticed that the defendant was wearing a nylon stocking over his face but that the stocking was made of a very sheer nylon that she could see through very clearly. During cross-examination, Bell stated that she had told an officer at the lineup that the gunman had reddish hair. (The defendant, who is an African-American, maintains that he has black hair and has always had black hair.)

Virgil Butrum testified that he was a customer observing his car being repaired in the garage area when the robbery occurred. Butrum stated that he heard a voice telling him to "freeze" and that he saw a man holding a machine gun. The man told him to lie on the floor. Butrum testified that a weapon, marked as exhibit number 2, was similar to the machine gun he observed during the robbery.

The State's last witness, Officer Robert Pietrowski, testified that he and three other officers were questioning the defendant about his name and address on August 7 while the defendant was in custody for an unrelated offense. Defense counsel objected to the prosecutor's question asking for the defendant's response on the grounds that the defendant's response was hearsay and the subject matter of the conversation was not disclosed in discovery. The trial judge overruled the objection, but offered defense counsel a continuance to mitigate any possible surprise. The offer was declined. Pietrowski then testified that he heard the defendant tell an Officer Miller that his address was 718 North Drake, second floor, rear apartment. He further testified that he obtained and executed a search warrant at 718 North Drake on August 7 where he recovered a semi-automatic .45 caliber rifle and a .45 caliber magazine. Officer Pietrowski identified exhibit number 2, the same weapon identified by Virgil Butrum as the type of weapon used in the robbery, as the weapon he recovered from the defendant's apartment.

The defense called two police officers to testify. Officer Thomas Piekarski stated that he conducted the August 7 lineup and that four persons viewed the lineup. In addition to Jeffery and Bell, the lineup was also viewed by Mr. Eddie Thigpen, a Chicago Spring and Bumper employee, and Mr. Martin Turpel. Renard Taylor viewed a lineup on August 8. Officer Camelia Antoinette Portis also testified regarding statements by witnesses she recorded at the scene, but nothing material was elicited.

In his closing statement, defense counsel argued that the evidence was insufficient to prove the defendant guilty beyond a reasonable doubt because the identification testimony by Jeffery and Joyce Bell lacked credibility, and the weapon found in the defendant's apartment was only shown to be "similar" to the type of weapon used in the robbery. The trial judge found the defendant guilty.

Prior to sentencing, the defendant filed a *pro se* motion for a new trial alleging ineffective assistance of counsel. The trial judge appointed a State Appellate Defender to represent Davis for his post-trial motion, and the appellate defender subsequently substituted an amended post-trial motion. Following a hearing, the trial judge denied

the motion. The crux of the post-trial motion was trial counsel's failure to investigate the disappearance of the defendant's briefcase after the police confiscated it upon his arrest for an unrelated offense. The defendant testified that when advised he was a suspect in the robbery, he asked to see his briefcase. The contents were then spilled on the table and he noticed that an appointment book was missing. The defendant asserted in his post-trial motion that the book contained information that would have revealed his whereabouts at the time of the robbery. The trial judge concluded that trial counsel never received a clear communication from the defendant as to the value of the papers in the briefcase and therefore the defendant was not denied effective assistance of counsel. No other deficiencies in representation were alleged. The trial judge further concluded that the evidence was sufficient to prove the defendant's guilt beyond a reasonable doubt notwithstanding Joyce Bell's characterization of the defendant as having reddish hair, and he commented that he did not think it was unreasonable to characterize the defendant's hair as having a red cast to it.

On direct appeal, the defendant argued that: (1) he was not proved guilty beyond a reasonable doubt; (2) he was denied a fair trial because the State suppressed evidence; (3) the statement by the defendant disclosing his address was admitted in violation of *Miranda v. Arizona*; and (4) he was denied his right to effective assistance of trial counsel. The defendant's ineffective assistance of trial counsel claim was broadened to include failure to adequately prepare for trial and failure to move for mistrial. In affirming the defendant's conviction, the appellate court held that the evidence was sufficient (103 Ill. App. 3d at 794) and rejected the defendant's contention that the State improperly suppressed evidence on the ground that the personal effects in the briefcase were not shown to be material to the defendant's defense. (103 Ill. App. 3d at 795.) The appellate court further held that the defendant's address was obtained during the routine booking process and *Miranda* warnings were therefore not required (103 Ill. App. 3d at 796), and that the defendant was not denied effective assistance of counsel. The court stated that the record showed that trial counsel conducted careful cross-examination, made appropriate objections when necessary, moved for a directed verdict, and presented an organized closing argument. 103 Ill. App. 3d at 796.

Between 1980 and 1984, the defendant filed three petitions in Federal court for a writ of *habeas corpus*. Each was denied for failure to exhaust State remedies. Before dismissing the third petition, the district court appointed present counsel, the law firm of Jenner and

Block, and gave the defendant 60 days to amend his third petition. The petition was so amended and later dismissed on August 28, 1985. The presiding judge, Prentice Marshall, dismissed the petition reluctantly, stating that the evidence suggested that the defendant had not received a fair trial. In a lengthy memorandum opinion, Judge Marshall gave this account in the following passage:

> "Petitioner's counsel failed to interview a single eyewitness to the robbery—a fact significant because of the several eyewitnesses to the robbery, only three identified petitioner in a lineup. Two of these testified at petitioner's trial. The identifications by both of these witnesses were shaky. During the robbery, the robber wore a nylon stocking over his head and face, but neither witness mentioned the stocking to police. It was not until trial that they mentioned the stocking. One witness initially reported to the police that the robber had red hair. Petitioner is a black man with black hair. The other witness failed to identify petitioner in the first lineup and could only identify him after a second look from all sides." *United States ex rel. Davis v. Lane* (N.D. Ill. August 27, 1985), No. 83—C—6194, slip op. at 5.

The defendant subsequently filed the present petition for post-conviction relief on August 6, 1986. As stated earlier, the defendant alleged, *inter alia*, that he was denied a fair trial due to ineffective assistance of trial counsel; that his statement disclosing his address was admitted in violation of *Miranda v. Arizona*; and that he was denied effective assistance of appellate counsel. Specifically, the gravamen of the defendant's first claim was trial counsel's failure to interview and call as witnesses persons identified in police reports as eyewitnesses to the robbery. He further alleged that evidence outside the record would demonstrate that the statement he made to the police disclosing his address was not elicited during routine booking and was therefore admitted in violation of *Miranda v. Arizona*. Finally, the defendant alleged that appellate counsel was incompetent for failing to raise these issues on appeal.

A hearing was held on February 15 and 16, 1989, during which it was revealed that Robert Stoller, the public defender who was appointed to represent the defendant, was replaced by another public defender, Peter Bell, sometime prior to trial. Peter Bell met with the defendant for the first time only two days before trial and his initial meeting lasted only 15 minutes as the defendant was upset by the change in representation. Bell was only able to ask basic biographical questions and, according to the defendant, Bell did not seem to have a

grasp of the facts. The defendant became agitated and terminated the interview. The testimony revealed that Mr. Bell did not seek a continuance and that he could not recall the reasons for not requesting one. Bell also stated that he could not recall a specific time or date for conferring with Stoller about the case but that it would have been inconceivable that they did not as they would have met as a matter of course.

Prior to trial, Stoller and Bell had in their possession police reports listing the names, addresses, and phone numbers of eyewitnesses to the robbery. Also contained in these reports were the results from a series of lineups. These reports, which were never admitted into evidence at the defendant's trial, indicated that while Joyce Bell positively identified the defendant, Jeffery and Taylor only made tentative identifications and two other witnesses, Eddie Thigpen and Martin Turpel, were unable to pick out the defendant as one of the robbers. The reports further indicated that three other eyewitnesses refused to view lineups altogether. Despite having this information, Stoller could not recall whether he interviewed any of these witnesses. Bell testified that he had a recollection of speaking with three witnesses but that he could not remember who they were. He also stated that he remembered the existence of an interview sheet containing information as to one witness but that the sheet was now missing from the file. When asked why he did not call any of the other eyewitnesses at trial, Bell stated that he must have concluded that whatever he was told by them would not have been helpful. Bell further stated that he did not interview either Joyce Bell or Jeffery even though he had predicted that Joyce Bell and Jeffery would be called as witnesses. An entry on the public defender's docket sheet indicated, however, that Joyce Bell was unavailable as she had moved.

The police reports also indicated that a cap had been discovered at the scene and inventoried. The trial testimony revealed that the gunman identified as the defendant wore some kind of "headgear" described as a "cap over something." Mr. Bell testified that he did not investigate the cap to check whether there were any hair samples on the cap that could have been tested for identification purposes. The trial testimony also reveals, however, that the second man, who carried a knife during the robbery, also wore a cap. Only one cap was found and inventoried.

The defendant then sought to elicit testimony regarding trial counsel's failure to impeach Joyce Bell and Jeffery. The trial judge refused to admit such testimony on the ground that the issue should have been raised on appeal. The defendant made an offer of proof

showing that Joyce Bell and Jeffery testified at trial that the defendant wore a stocking mask and that this information was not contained in the police reports.

The defendant also sought to introduce evidence, some of which was admitted and some of which was refused, showing that the defendant's address was not elicited during routine booking as stated by the prosecution at trial, but in fact, was elicited during a custodial interrogation. The trial judge refused to consider the issue on the grounds that the issue should have been raised on appeal, and the defendant made several offers of proof. The thrust of the defendant's *Miranda* theory was that he gave an incorrect address upon arrest which is reflected in the arrest report that was filled out during booking, and that the defendant's true address was obtained later during a custodial interrogation without being advised of his *Miranda* rights. The record also reveals that the defendant was arrested with three other persons, one of whom may have disclosed the defendants true address and informed the police that the defendant had a gun in his apartment.

The defendant also sought to introduce the testimony of Eddie Thigpen, but the court refused to permit him to testify. An offer of proof was made showing that Thigpen was never contacted by any public defender and could have testified at trial that he could not identify the defendant as one of the robbers during a lineup. After the offer of proof was completed, the trial judge allowed into evidence the statement that Thigpen had never been contacted by any public defender.

The defendant also made an offer of proof on another issue concerning trial counsel's failure to accept the trial judge's offer of a continuance when Officer Pietrowski gave surprising testimony about the defendant's statement revealing his true address. Finally, the defendant made an offer of proof regarding his alleged inadequate representation at the appellate level after the trial court refused to hear evidence on that issue, ruling that the issue was "a matter that has already been addressed in the appellate court level, and I can't rule on that." As indicated above, the lower court applied the "farce or sham" standard in determining the issue of ineffective assistance of trial counsel and denied the defendant's petition for post-conviction relief.

On this appeal, the defendant contends that the trial judge erroneously applied the "farce or sham" standard and that under the correct standard, the evidence admitted at the hearing is sufficient to show ineffective assistance of trial counsel. The defendant maintains

that the evidence adduced at his post-conviction hearing proves that trial counsel was unprepared for trial as counsel did not meet with him until two days before trial and was unfamiliar with the facts and possible defenses. The defendant asserts that his trial counsel's failure to prepare resulted in the absence of Eddie Thigpen and Martin Turpel at trial. The defendant argues that their testimony, which would have revealed their prior failure to identify the defendant at the lineups, would have created a reasonable doubt as to the defendant's guilt when considered in conjunction with what Judge Marshall characterized as the "shaky" testimony of Henry Jeffery and Joyce Bell. The defendant asserts that the trial counsel's failure to have the cap investigated for hair samples deprived the defendant of potentially exonerating evidence.

In the alternative, the defendant contends he is entitled to a new hearing because the excluded evidence, when considered in combination with the admitted evidence, would show that he was denied effective assistance of trial counsel. The defendant further contends that his statement disclosing his address to the police was admitted in violation of *Miranda v. Arizona*. On direct appeal, this court held that *Miranda* warnings were not required because the address was obtained during booking. The defendant asserts that the police reports, which reveal that the defendant gave an incorrect address during booking, demonstrate that the defendant's correct address must have been obtained during a custodial interrogation. Finally, defendant argues that the trial judge erred in refusing to allow evidence regarding his claim that he was denied the effective assistance of appellate counsel.

■ The Post-Conviction Hearing Act affords convicted criminal defendants a proceeding to collaterally attack the final judgment of conviction where it is alleged that substantial violations of constitutional rights occurred in their trials. (*People v. Owens* (1989), 129 Ill. 2d 303, 307-08, 544 N.E.2d 276.) The scope of the proceeding is limited to issues which have not been, and could not have been, adjudicated previously. (*Owens*, 129 Ill. 2d at 308.) The determination of the trial judge in a post-conviction proceeding will not be disturbed on appeal unless it is manifestly erroneous. (*People v. Lovitz* (1984), 127 Ill. App. 3d 390, 398, 468 N.E.2d 1010.) After careful review of the record and the arguments presented to us, we reverse and grant the petitioner a new trial. We agree that the evidence admitted in the post-conviction hearing establishes that the petitioner was denied effective assistance of trial counsel. Our decision renders it unnecessary to reach the defendant's remaining claims.

 █ Before explaining our reasons for reversing, we briefly respond to those contentions of the State seeking to bar our consideration of the merits on procedural grounds. The State contends that the question concerning the failure to interview and call witnesses is waived because the police reports were in the defense's possession and, therefore, the issue could have been raised on direct appeal. It is well settled that "all issues actually decided on direct appeal are *res judicata,* and all those which could have been presented [on direct appeal] but were not are deemed waived." (*E.g., People v. Stewart* (1988), 123 Ill. 2d 368, 372, 528 N.E.2d 631.) The question here, therefore, is whether the failure to interview and call witnesses listed in the police reports could have been raised on direct appeal even though the reports were never admitted into evidence at trial. The State relies upon *People v. Jones* (1985), 109 Ill. 2d 19, 23, 485 N.E.2d 363, where the court applied the waiver rule because "every ground for ineffectiveness that defendant has properly raised was apparent from the original appellate record or could have been supplemented to that record under our Rule 329 (87 Ill. 2d R. 329)." The State cites no authority, however, showing that Supreme Court Rule 329 would have permitted the defendant to supplement the record on appeal with the police reports in question. As Rule 329 applies to "[m]aterial omissions or inaccuracies or improper authentication," the State's argument is not convincing. See *People v. Tinsley* (1974), 16 Ill. App. 3d 360, 361, 306 N.E.2d 310.

 The State further asserts that the court should not address the failure to interview and call witnesses on the ground that the defendant failed to attach affidavits to his petition showing the significance of the potential testimony of the absent eyewitnesses. (See *People v. Jennings* (1952), 411 Ill. 21, 26, 102 N.E.2d 824; *People v. Carmickle* (1981), 97 Ill. App. 3d 917, 920, 424 N.E.2d 78.) This contention is without merit, however, as an evidentiary hearing has already been conducted and, as the State did not raise the issue below, the State cannot raise it now for the first time on appeal. *People v. Washington* (1967), 38 Ill. 2d 446, 449, 232 N.E.2d 738.

 █ "The 'benchmark' for judging a claim of ineffective assistance of counsel is 'whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.' " (*People v. Garza* (1989), 180 Ill. App. 3d 263, 267, 535 N.E.2d 968, quoting *Strickland v. Washington* (1984), 466 U.S. 668, 686, 80 L. Ed. 2d 674, 692-93, 104 S. Ct. 2052, 2064.) In evaluating counsel's performance, matters of judgment, discretion and trial tactics are not reviewable. (*People v.*

*Reed* (1980), 84 Ill. App. 3d 1030, 1042, 405 N.E.2d 1065.) The mere fact that the trier of fact rejected the defendant's defense or that another attorney aided by hindsight would have handled the case differently is not indicative of incompetence. (*Reed,* 84 Ill. App. 3d at 1043.) Claims of ineffective assistance of counsel must be resolved on a case-by-case basis. *Garza,* 180 Ill. App. 3d at 269.

In ruling against the defendant, the trial judge commented as follows:

> "The Petitioner is under *** the obligation to show by evidence that the trial and the assistance of the counsel that he had at his trial reduced the trial at which he was found guilty to, I think the courts call it, a charade.
>
> And that the level of legal counseling is so low that it just about amounts to no counsel at all."

The State concedes that the trial judge was in error. At the time of the defendant's trial in 1978, the "farce or sham" standard governed where the accused was represented by retained or private counsel. (*People v. Royse* (1983), 99 Ill. 2d 163, 168, 457 N.E.2d 1217.) Where the accused was represented by appointed counsel, as was the defendant here, the applicable standard held that counsel was constitutionally ineffective if counsel was actually incompetent, and the incompetence produced substantial prejudice to the defendant without which the result would have been different. *People v. Greer* (1980), 79 Ill. 2d 103, 120-21, 402 N.E.2d 203.

The parties are in agreement that the *Greer* standard is the correct standard. The defendant also advises us that he does not contend that the current standard enunciated in *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052, applies retroactively. Under *Strickland,* the defendant must show: (1) that his counsel's performance fell below an objective standard of reasonableness; and (2) a reasonable probability that but for counsel's unprofessional performance, the result would have been different. (*E.g., Owens,* 129 Ill. 2d at 309.) We note, however, that our disposition of this appeal would not differ under either standard as we agree with the second district that the two standards are "essentially the same." *People v. Young* (1985), 136 Ill. App. 3d 107, 112-15, 482 N.E.2d 1008. See also *People v. Lewis* (1984), 105 Ill. 2d 226, 244, 473 N.E.2d 901 (stating that the result would be the same under *Strickland* and *Greer*).

It is clear that "[t]he failure to interview witnesses may indicate actual incompetence (*People v. Witherspoon* (1973), 55 Ill. 2d 18), particularly when the witnesses are known to trial counsel and their

testimony may be exonerating (*People v. Stepheny* (1970), 46 Ill. 2d 153)." (*People v. Greer* (1980), 79 Ill. 2d at 123. See also *People v. Bell* (1987), 152 Ill. App. 3d 1007, 1011-13, 505 N.E.2d 365; *People v. Corder* (1982), 103 Ill. App. 3d 434, 431 N.E.2d 701.) The defendant's trial counsel had in his possession police reports which contained the names, addresses and phone numbers of several eyewitnesses who were present during the robbery, two of whom were unable to pick out the defendant while viewing lineups. Moreover, the police reports indicated that of the several eyewitnesses, only Joyce Bell made a positive identification while Jeffery only made a tentative identification. Notwithstanding the value of this information, Eddie Thigpen was never contacted. The inability of Thigpen and Turpel to pick out the defendant while viewing lineups calls into question the reliability of the identifications by Jeffery and Bell. The failure to at least interview and secure the attendance of Thigpen at trial was, in our judgment, incompetent.

Our conclusion that trial counsel was incompetent is not inconsistent with this court's previous decision on direct appeal that trial counsel conducted careful cross-examination, made appropriate objections when necessary, moved for a directed verdict, and presented an organized closing argument. (103 Ill. App. 3d at 796.) That decision was based solely on the evidence contained in the record. As explained by one court:

> "[R]epresentation involves more than the courtroom conduct of the advocate. The exercise of the utmost skill during trial is not enough if counsel has neglected the necessary investigation and preparation of the case or failed to interview essential witnesses or to arrange for their attendance. Such omissions, of course, will rarely be visible on the surface of the trial, and to that extent the impression of a trial judge [or reviewing judge] regarding the skill and ability of counsel will be incomplete."
> *Moore v. United States* (3d Cir. 1970), 432 F.2d 730, 739.

The State contends, however, that no prejudice has been shown as a result of counsel's omissions. Prejudice is established where the defendant shows a reasonable probability that but for counsel's unprofessional errors, the result would have been different. (*Garza,* 180 Ill. App. 3d at 268.) A reasonable probability is a probability sufficient to undermine confidence in the outcome. (*Garza,* 180 Ill. App. 3d at 268.) The State makes the blanket assertion that the failure of Thigpen and Turpel to identify the defendant in a lineup "adds nothing to defendant's case." We disagree. Standing alone, the identification testimony by Jeffery and Bell was sufficient to convict.

Their testimony, however, was crucial in view of the fact that the weapon recovered from the defendant's apartment was only shown to be "similar" to the type of weapon used in the robbery and there was no other evidence linking the defendant to the robbery. Moreover, the defendant's semi-automatic rifle was only shown to be similar to the type of gun used by the third gunman. The first gunman identified as the defendant had used a nickleplated handgun that was never recovered. Had the failure of Thigpen and Turpel to identify the defendant been brought to the attention of the trial judge, the identification testimony by Jeffery and Bell may not have carried as much weight. We believe that under the circumstances, had this additional information been presented, a rational trier of fact may have concluded that a reasonable doubt existed on the question of guilt. Consequently, we hold that there exists a reasonable probability that the outcome would have been different had trial counsel been adequately prepared.

Accordingly, we reverse the judgment of the circuit court denying the defendant's petition and grant the defendant a new trial.

Judgment reversed.

RIZZI and WHITE, JJ., concur.