THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. BILLY TRULY, Defendant-Appellant.

First District (3rd Division)   No. 1—88—3149

Opinion filed June 17, 1992.

TULLY, J., concurring in part and dissenting in part.

J. Owen Freelon, of Freelon & Associates, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb and James E. Fitzgerald, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE GREIMAN delivered the opinion of the court:

After a bench trial, defendant Billy Truly was found guilty of armed robbery of a grocery store and sentenced to 10 years in prison.

In this appeal, defendant contends (1) he received ineffective assistance of counsel when his attorney failed to investigate, prepare and present defendant's alibi to the crime; (2) his attorney failed to inform him that he was being counseled by a law student and failure to obtain defendant's written consent for such counseling constituted *per se* ineffective assistance of counsel; and (3) the cumulative effect of the errors committed by his attorney deprived defendant of his right to effective assistance of counsel.

We affirm the trial court's ruling that there was no *per se* violation for the failure to obtain defendant's permission to be interviewed by a law student, but reverse in finding there was ineffective assistance of counsel for failure to investigate, prepare and present defendant's alibi.

At about 7 p.m. on December 28, 1987, two men, one of whom was later identified as defendant, entered George's Foods on South

Kedzie Street. Said Alharsha, the owner of the store, was present with his two brothers, Naser Alharsha and Ahmed Alharsha. Said Alharsha testified that defendant nodded to his accomplice, who then told Said that it was a stickup. The two men took money from the cash register, the wallets of the three brothers and ran out of the store.

Said testified that he next saw defendant at about 11:30 a.m. on January 1, 1988, four days after the holdup. When defendant entered the store with two other men, Said pushed the silent alarm button. Defendant carried a golf club and said "Don't worry about it, it's not a stick-up."

Defendant told Said that he knew the store had been robbed and that if Said wanted to live and work in the neighborhood, he would have to pay him and the two men with him $50 per week. Said testified that he haggled over price with defendant until police arrived, then advised police that defendant committed the December 28 robbery and was now attempting to extort money from him. Both Said and his brother Naser testified that they knew defendant prior to the robbery, from the neighborhood.

Officer Smith testified for the State that when he answered the silent alarm at George's Foods on January 1, 1988, Said identified defendant as the person involved in the earlier robbery and who was now demanding protection money. After Smith arrested defendant and took him to the police station, defendant acknowledged to Smith that he was aware of the robbery and wanted the $50 as protection money to keep the store from being robbed again.

After the trial court found defendant guilty of armed robbery, defendant filed an amended motion for new trial based upon incompetency of counsel.

At that hearing, defendant testified that his trial counsel visited him only on the days he was to appear in court, and the visits lasted only 5 to 10 minutes. Defendant stated that he provided counsel with the names and addresses of four potential witnesses who could testify that during the time of the alleged robbery, defendant was recuperating from a gunshot wound and that the complainants had ulterior motives for identifying defendant as the culprit.

Defendant claims he directed his counsel to subpoena these witnesses and Mt. Sinai Hospital records and personnel to establish that he had been hospitalized prior to the robbery and retained some physical incapacity at the time of the robbery. Defendant further testified that on the day of trial, he asked counsel to request a

continuance because counsel had not subpoenaed any of the witnesses, his medical records, or his physical therapist.

Counsel testified that either he, his partner or his law intern spoke to defendant whenever defendant's case was before the court, a total of approximately 10 to 12 times before trial. He acknowledged that he and defendant discussed possible defense theories and trial strategy and admitted that three to four months before the trial, defendant had informed his law intern of the alleged alibi witnesses.

Counsel had attempted, without success, to contact the witnesses by telephone and therefore contends he was not directly in a position to evaluate the potential value of these witnesses to the defense. No investigator from the public defender's office was requested to attempt to contact the potential witnesses, nor were they subpoenaed. Counsel acknowledged that he assumed the witnesses would come forward on their own, and because of their failure to make themselves available, he was unable to prepare an alibi defense based upon their testimony.

When asked if he was ready to proceed with the trial on the trial date, counsel responded that "the pleadings were completed and the case could have gone to trial. I don't believe that Mr. Truly's alleged witnesses were there that day." While he testified that it was defendant's decision to go to trial, he acknowledged that he had told defendant that he doubted he could get a continuance since he had earlier made a trial demand.

Defendant's counsel testified that he did remember defendant mentioning medical records, but thought that they concerned defendant's health only at the time of the arrest, not at the time of the robbery, so he did not consider them relevant and did not obtain them.

Henry Bynum, defendant's stepfather, was one of the four defendant requested counsel subpoena for trial. Mr. Bynum testified at the post-trial hearing that on the day of the robbery, defendant left Bynum's house at 7 p.m., the approximate time of the robbery, to run an errand for his mother, and did not return home until 9 p.m., and at that time, defendant did not walk without the aid of a cane, due to a recent gunshot wound.

Lawrence Swift, defendant's uncle and another of the four people defendant had requested be subpoenaed for trial, also appeared at the post-trial hearing. However, the substance of his testimony was ruled hearsay. Defendant's post-trial counsel made an offer of proof that Mr. Swift would testify as to a conversation he had with

Said that would reflect on Said's motivation for retribution against defendant. The offer of proof indicated that Said was upset with defendant because he was dissatisfied with some radios and VCRs that defendant had sold him, believed defendant had cheated him and made a threat to even the score.

Defendant's other two alibi witnesses, at least one of whom was medical personnel who would testify as to defendant's physical condition, did not testify at the hearing; Joyce Stevens was subpoenaed, but the fourth witness, Christine Matlid, could not be located. While defendant also subpoenaed Mt. Sinai Hospital for his medical records for the purpose of the hearing, those documents were not tendered, so the court had no chance to consider them in its ruling.

The "benchmark" in determining whether there has been ineffective assistance of counsel is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." (*Strickland v. Washington* (1984), 466 U.S. 668, 686, 80 L. Ed. 2d 674, 692-93, 104 S. Ct. 2052, 2064; *People v. Davis* (1990), 203 Ill. App. 3d 129, 139, 560 N.E.2d 1072; *People v. Garza* (1989), 180 Ill. App. 3d 263, 267, 535 N.E.2d 968.) A reviewing court does not evaluate matters of judgment, discretion or trial tactics. *Davis*, 203 Ill. App. 3d at 139.

■■ The U.S. Supreme Court developed a fact-sensitive analysis in *Strickland* which seeks to measure " 'the quality and impact of counsel's representation under the circumstances of the individual case.' " (*Garza*, 180 Ill. App. 3d at 268, quoting 2 W. LaFave & J. Israel, Criminal Procedure §11.10, at 28 (Supp. 1988).) A defendant must prove (1) that counsel's representation fell below an objective standard of reasonableness and the shortcomings of counsel were so severe as to deprive defendant of a fair trial, and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. (*Strickland*, 466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064; *People v. Albanese* (1984), 104 Ill. 2d 504, 525, 473 N.E.2d 1246; *People v. Gunartt* (1991), 218 Ill. App. 3d 752, 761, 578 N.E.2d 1081; *Garza*, 180 Ill. App. 3d at 268.) A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Davis*, 203 Ill. App. 3d at 141; *Garza*, 180 Ill. App. 3d at 269.

A reviewing court must evaluate the attorney's performance from counsel's perspective considering the circumstances at the time of trial, without the distorting effects of hindsight, and the defendant must overcome the strong presumption that the chal-

lenged action might be considered sound trial strategy. *Strickland*, 466 U.S. at 689, 80 L. Ed. 2d at 694, 104 S. Ct. at 2065; *Garza*, 180 Ill. App. 3d at 269.

Defendant first contends that his counsel failed to investigate and develop defendant's alibi, thus resulting in ineffective assistance of counsel similar to the situations in *People v. Garza* (180 Ill. App. 3d 263, 535 N.E.2d 968) and *People v. Solomon* (1987), 158 Ill. App. 3d 432, 511 N.E.2d 875. These cases found that failure to adequately investigate and develop an available defense, or failure to present available witnesses who can corroborate a defense, may be ineffective assistance of counsel. *Garza*, 180 Ill. App. 3d at 269; *Solomon*, 158 Ill. App. 3d at 436. See also *People v. Gunartt* (1991), 218 Ill. App. 3d 752, 578 N.E.2d 1081; *People v. O'Banner* (1991), 215 Ill. App. 3d 778, 575 N.E.2d 1261; *Davis*, 203 Ill. App. 3d 129, 560 N.E.2d 1072.

In *Solomon*, defendant's counsel had raised an entrapment defense to the charge of unlawful delivery of a controlled substance, but failed to take reasonable steps to find the witness who could have proved the element of improper inducement. The *Solomon* court found assistance of counsel was ineffective where defense counsel improperly introduced the entrapment defense without the witness and failed to secure chemical analysis of the controlled substance which was the subject matter of the case. *Solomon*, 158 Ill. App. 3d at 436-37.

In *Garza*, the appellate court held there was ineffective assistance of counsel where the evidence was very closely balanced and defense counsel failed to elicit the discrepancies and inconsistencies in the testimony of the State's sole eyewitness who linked the defendant to the crime. The court concluded there was a reasonable probability that the level of performance by defendant's counsel influenced the result of the proceedings. *Garza*, 180 Ill. App. 3d at 269.

Moreover, in *Garza*, defense counsel failed to offer in evidence two photographs that might have cast doubt upon the witness' ability to identify defendant. While the State argued on appeal that this was merely a tactical decision by defense counsel, the appellate court reasoned that since counsel had failed to obtain the photos and, in fact, never saw them, he could not have made an informed tactical decision one way or the other. *Garza*, 180 Ill. App. 3d at 269.

■ We apply the same reasoning to the case at bar. Counsel testified that he would not include any witnesses in the proceedings

if he did not have contact with them or know what their testimony would be. While the State here argues that it was a matter of trial strategy whether to require appearance of the four witnesses, we find, as the *Garza* court found, that counsel could not have made a strategic decision since he admitted that he had made no contact with the witnesses and did not know what the content of their testimony might be.

Traditionally, courts have not reviewed an attorney's choices when made on the basis of strategic considerations. However, these strategic decisions may be made only after there has been a "thorough investigation of all matters relevant to plausible options." (*Strickland*, 466 U.S. at 690, 80 L. Ed. 2d at 695, 104 S. Ct. at 2066; *People v. Whittaker* (1990), 199 Ill. App. 3d 621, 628-29, 557 N.E.2d 468.) We find that defendant here apprised his attorney on several occasions of what appears to be a plausible option: an alibi coupled with a physical incapacity.

Defendant repeatedly told his defense counsel that the testimony of the four witnesses would reveal (1) his whereabouts at the time of the robbery, 33 blocks away from the complaining witnesses' store; (2) that defendant was physically handicapped, walking with a cane at the time of the robbery, and not likely to have run out of the store as complainants testified; and (3) that the complainants had a revenge motive in identifying defendant as one of the robbers.

Counsel testified that he thought these potential corroborating witnesses would come forward on their own, and when they did not, the record establishes that he made no reasonable attempt to contact them. When his initial phone calls could not raise the witnesses, he failed to subpoena these witnesses or request that an investigator from the public defender's office find them.

The situation in this case differs from a situation in which an attorney's decision whether to call a witness to testify may be considered strategic. (See *People v. Flores* (1989), 128 Ill. 2d 66, 85-86, 538 N.E.2d 481.) Here, counsel's decision could not be considered strategic since he failed to investigate all matters relevant to the plausible defenses of alibi, incapacity and revenge that defendant proffered to him. *Strickland*, 466 U.S. at 690, 80 L. Ed. 2d at 695, 104 S. Ct. at 2066.

This court has previously noted that representation involves more than the courtroom conduct of counsel:

" 'The exercise of the utmost skill during trial is not enough if counsel has neglected the necessary investigation and prepara-

tion of the case or failed to interview essential witnesses or to arrange for their attendance. Such omissions, of course, will rarely be visible on the surface of the trial, and to that extent the impression of the trial judge [or reviewing judge] regarding the skill and ability of counsel will be incomplete.' " *Davis*, 203 Ill. App. 3d at 141, quoting *Moore v. United States* (3d Cir. 1970), 432 F.2d 730, 739.

We find from the record that counsel was derelict in his duties in that he or his assistants never made a reasonable attempt to locate or subpoena the four potential witnesses, witnesses who defendant repeatedly told counsel could corroborate his defense theories, witnesses whose names and addresses were provided to counsel by defendant. This dereliction amounts to ineffective assistance of counsel because we find that counsel's errors fall below an objective standard of reasonableness and that there is at least a reasonable probability that but for counsel's unprofessional errors, the result of the proceedings would have been different. Further, we find the evidence against defendant to be closely balanced.

■ The State's evidence is grounded in the testimony of Said and Naser Alharsha, who both stated that they knew defendant prior to the robbery and that they recognized him during the robbery. However, defense counsel failed to investigate and develop defendant's plausible theory that the brothers' identification of him was fabricated out of a desire for revenge for past business dealings with defendant. Defendant informed his counsel that he had a witness, Lawrence Swift, who could testify to this theory on his behalf.

The revenge theory, coupled with defendant's proffered alibi that he was physically and geographically unable to commit the robbery, forms a plausible defense theory for which defendant offered four witnesses. Because defense counsel failed to put forward defendant's plausible alibi, to which the revenge theory was integral, we cannot say that the testimony of the Alharsha brothers carries such weight so as to provide a rational trier of fact proof of guilt beyond a reasonable doubt if the other evidence had been offered.

While the trial court heard testimony from two of defendant's potential witnesses at the hearing for new trial, the other two witnesses and the hospital records were not available to defendant at that time. The trial court stated that the testimony of the two witnesses did not persuade it to grant the motion, but we find that their testimony demonstrates that defendant was in fact prejudiced

by his counsel's failure to secure witnesses and adequately investigate defense theories.

Consideration of the testimony of these witnesses at a post-trial hearing is in a different context than it would have been had it been offered during the course of the trial rather than subsequent to the trier of fact determining defendant's guilt.

In *People v. Perez* (1992), 148 Ill. 2d 168, in a death penalty post-conviction hearing, defense counsel was found ineffective when he failed to pursue or send a court-appointed investigator to pursue mitigating information and witnesses supplied by defendant.

While we recognize that *Perez* concerns a death penalty hearing, the situation in the present case is similar in that defendant supplied counsel with specific information that was potentially exonerating. The present case is possibly more egregious since counsel knew of the information approximately four months before trial, rather than only a few days as was the situation in *Perez*. Also, counsel here, as in *Perez*, failed to ask for a continuance to investigate the proffered evidence, even though defendant here requested he do so.

The *Perez* court stated that had the jury heard the evidence which had not been made available to it, there is a probability that it would have concluded that the balance of factors did not warrant death. Similarly we must conclude that there might have been a reasonable doubt as to defendant's guilt had the trier of fact heard the witnesses defense counsel failed to locate.

■ We further find the record establishes that defense counsel failed to obtain, or attempt to obtain, defendant's written consent to allow a law student to help prepare defendant's case, as is required pursuant to Supreme Court Rule 711, and that counsel did not believe such consent was necessary where no court appearance was involved. However, that failure to obtain written consent is not *per se* ineffective assistance of counsel. While we agree that the constitutional rights of a defendant may not be compromised, we do not find that defendant's rights have been put at such risk in this case by the failure to obtain written consent.

As noted above, judicial review regarding ineffective assistance of counsel is performed on a case-by-case basis in an attempt to comprehend counsel's perception and integration of the combination of facts, circumstances and law unique to that case. The situation in one case may not easily be analogized to the situation in another. To hold that an attorney's failure to obtain defendant's written consent is *per se* ineffective assistance of counsel would handicap and

restrict judicial review of such violations in other cases where ineffective assistance of counsel is alleged.

Defendant cites two cases involving the representation of defendants by law students in proceedings before a judge. (*People v. Schlaiss* (1988), 174 Ill. App. 3d 78, 528 N.E.2d 334; *In re Moore* (1978), 63 Ill. App. 3d 899, 380 N.E.2d 917.) However, we do not find those cases apply to the present situation. In *Schlaiss*, the court found that defendant was denied his sixth amendment right to counsel because he was not aware that the person representing him in his trial was not a licensed attorney, and he had not given consent to be represented by a law student.

The defendant in *Moore* appeared *pro se* in a hearing in which the State charged that defendant required mental treatment. The appellate court found that defendant was not informed that the legal advisor that he had chosen, a law student, was not a licensed attorney, so had not given proper consent.

We agree with defendant that he should receive zealous representation by his attorney at each stage of the trial process. A defendant is entitled to competent representation out of court as well as in court, as we have clearly set forth here in our discussion regarding counsel's assessment of defendant's four potential witnesses. But this case cannot support a charge of ineffective assistance of counsel based upon counsel's failure to obtain defendant's consent allowing a Rule 711 law student to participate in the preparation of his case.

Defendant raises additional instances of his counsel's actions or omissions at trial that he contends cumulatively amount to ineffective assistance of counsel: (1) failure to file a motion *in limine* objecting to any reference to defendant's alleged crime at the store on January 1, 1988; (2) failure to object to hearsay testimony of complainant as to the armed robbery and defendant's alleged attempt at extortion; (3) failure to object to the hearsay testimony of the arresting officer as to the armed robbery and extortion; (4) counsel's introduction into evidence of the police report; and (5) counsel's statement in closing argument that defendant had tried to extort money from the Alharshas.

■ We cannot say that these enumerated actions or omissions, even taken cumulatively, amount to ineffective assistance of counsel since they appear to be within the generally protected category of strategic trial decisions.

However, we have indicated that defendant's trial counsel failed to make a reasonable attempt to contact witnesses and submit hos-

pital records that might have provided corroborative evidence to a valid defense theory benefitting defendant. Such failure amounts to ineffective assistance of counsel since we find that the omissions so undermine the proper functioning of the adversarial process that we cannot rely upon the trial as having produced a just result.

Accordingly, we reverse the judgment of the circuit court and grant defendant a new trial.

Reversed.

CERDA, J., concurs.

JUSTICE TULLY, concurring in part and dissenting in part:

I agree that defense counsel's failure to obtain written permission to allow a law student acting under the authority of Supreme Court Rule 711 (c)(1) (134 Ill. 2d R. 711 (c)(1)) to assist defense counsel is not a *per se* violation of the defendant's right to effective assistance of counsel for the reasons articulated in the opinion.

However, I must respectfully dissent with my colleagues that defendant was rendered ineffective assistance by his counsel which resulted in an unjust trial. The foundation of my concurrence on this issue is the rule of law established in *Strickland v. Washington* (1984), 466 U.S. 688, 80 L. Ed. 2d 674, 104 S. Ct. 2052. *Strickland* issued a double-pronged mandate that counsel's behavior must fall below an objective standard of reasonableness *and* counsel's behavior must fall to a level of deficiency such that the eventual outcome of the trial would have been different but for counsel's actions. (466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064.) Both prongs of the *Strickland* mandate must be met to reach a conclusion of unreliable trial results. I am of the opinion that defense counsel's actions, viewed in the totality of circumstances surrounding the case, did not meet the criteria established in *Strickland*.

The defendant argues that a subpoena of certain hospital records would have validated his claim that he was incapacitated at the time the robbery occurred. Yet, defendant admitted to Officer Smith that *two* days after his period of "incapacitation" he freely walked into the site of the robbery and demanded protection money. What, in effect, would the hospital records have established? Could the hospital records have conclusively established the condition of the patient at the time of the robbery or would they have established the defendant's condition during the time he was under hospital supervision for his wound? Even assuming *arguendo* that

defendant needed the assistance of a cane to ambulate, the golf club which he carried on the day he entered the robbery site to demand extortion money could have served this function. Thus, defense counsel's claim that the defendant's medical records were not relevant and had no bearing on the case is entirely credible and falls within the scope of counsel's trial strategy.

Defendant's argument that his counsel's failure to interview witnesses who could have established his alibi to the crime also fails to meet the criteria set forth in *Strickland*. (466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064.) Defense counsel did not simply ignore defendant's request to contact certain witnesses. Counsel made the effort to contact the requested witnesses but was unsuccessful. Counsel discussed trial strategy with the defendant. It was only after the defendant made the decision to go to trial without the benefit of the information the witnesses could or could not have provided that counsel proceeded. The defendant did not request counsel to ask for a continuance to pursue the location of the witnesses. Therefore, defense counsel cannot be said to have failed to investigate or act upon his client's information but rather counsel clearly proceeded with a trial strategy that was implicitly sanctioned by the defendant. Accordingly, no finding of unreliability in the trial process has been substantiated due to the actions of defendant's counsel.