THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. STEWART SOLOMON, Defendant-Appellant.

First District (5th Division)   No. 85—1576

Opinion filed July 24, 1987.

Julius Lucius Echeles, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Joan S. Cherry, Mary Ellen Dienes, and Curtis A. James, Assistant State's Attorneys, of counsel), for the People.

JUSTICE LORENZ delivered the opinion of the court:

Following a bench trial defendant was convicted of delivery of a controlled substance, methaqualone, in excess of 30 grams. He was sentenced to the minimum six years' imprisonment for a Class X felony and was ordered to pay a $2,000 fine. Defendant appeals urging the following. First, he was deprived of effective assistance of counsel. Second, he was not proven guilty beyond a reasonable doubt because, among other reasons, the evidence established entrapment as a matter of law. Third, the trial court improperly refused to allow defense counsel the opportunity to personally view a State informant's Metropolitan Enforcement Group file.

We reverse and remand for a new trial.

The following pertinent testimony was adduced at trial. Officer Victoria Gadowski, a Cook County sheriff working as an undercover agent for the Northwestern Metropolitan Enforcement Group (MEG) under the code name of Robbin, testified that on January 10, 1983, she met defendant for the first time in the parking lot of Jack's Res-

taurant in Skokie. Also present was Mitch Freilander, known also as Max Miller, who initially introduced defendant to Officer Gadowski. Freilander was paid by MEG for setting up the meeting. During this meeting, which took place in defendant's car, defendant handed Officer Gadowski a clear plastic bag which purportedly contained 20 methaqualone tablets, commonly known as quaaludes. Officer Gadowski paid him $100 for the quaaludes and inquired if defendant could get her a better price if she bought more. He replied that he could not sell the tablets for less than $5 apiece because he was presently negotiating a purchase for 20,000 quaaludes and his source was going to charge him $5 each. He also stated that when he sold quaaludes at Houlihan's he averaged $2,000 a week and received between $7.50 and $8 per tablet. Defendant told Officer Gadowski that if she were interested in larger quantities, he could be reached between 9 a.m. and 6 p.m. where he worked or in the evenings at home.

According to Officer Gadowski, on January 20, 1983, she called defendant at work in order to set up another meeting for the purpose of purchasing more quaaludes from defendant. Officer Gadowski left her number because defendant was not in at the time, and he later returned her call. Arrangements were made to meet defendant on January 21, 1983, at 6:30 p.m. This meeting took place again in defendant's car, although this time Mitch Freilander was not present. At this meeting defendant exchanged 60 quaaludes for $300. After the transaction defendant told Officer Gadowski he could handle larger orders of quaaludes if she was interested but that he would need a day's notice. He also told her that he was looking for a partner for a purchase of 5,000 quaaludes. Officer Gadowski told defendant that she would consider it and would call him the following week.

On February 16, 1983, at 1 p.m., Officer Gadowski called defendant at work. During this conversation, Officer Gadowski arranged to meet again with defendant for the purpose of purchasing 300 quaaludes. At 6:40 p.m. on February 17, 1983, they met. Defendant handed Officer Gadowski a manila envelope. The envelope contained three clear plastic bags, each containing 100 tablets. Officer Gadowski then handed defendant $1,500. She left defendant's car and notified surveillance officers, who took defendant into custody. Defendant was charged with delivery of a controlled substance solely with regard to the February 17 transaction.

During cross-examination of Officer Gadowski on March 5, 1985, defense counsel requested that the trial court order production of the MEG file on Mitch Freilander, for viewing by the defense, or by the court in an *in camera* inspection. The trial court ordered that the file

be produced for *in camera* inspection. After reviewing the file the court ruled that it would not be tendered to defense counsel because nothing was found in the file which related in any way to the offense with which defendant was charged.

Also called to testify for the prosecution was Stephen Hampton, a forensic scientist. Hampton testified that the three bags that were sold by defendant to Officer Gadowski on February 17, 1983, each contained 100 white tablets which were individually marked with the lettering "Lemmon 714," the manufacturer's designation for methaqualone. The net weight of the tablets was 244.3 grams. Mr. Hampton also testified that he randomly selected 10 tablets from the first bag and performed various tests upon them which produced results consistent with the presence of methaqualone. Mr. Hampton further testified that when the same tests were performed on 10 tablets randomly selected from the second bag and five tablets selected from the third bag, the same test results were produced, which led to his conclusion that the tablets contained methaqualone.

On March 5, 1985, after the prosecution had rested the defense called defendant, defendant's father and a chemist to the witness stand. The evidence submitted, which will be elaborated upon later, supported defendant's theory of entrapment. In order to further establish the defense of entrapment, the defendant also requested that the court order the State to produce Mitch Freilander. The trial court then ordered the State to release Mitch Freilander's last known address and Bureau of Identification sheet so that he could be located. The case was then continued until March 11, 1985, so as to provide time in which to locate Freilander.

On March 11, 1985, the trial court granted another continuance to March 20, 1985, to allow even more time to ascertain Freilander's whereabouts. However, on March 20, 1985, in light of the fact that further attempts in locating defendant had been fruitless, the trial court ruled that the trial would continue without Freilander. The defense then rested.

OPINION

Defendant initially contends that he was deprived of effective assistance of counsel when his counsel: (1) failed to attempt to compel Freilander's production earlier in the proceedings; (2) failed to take any meaningful steps to attempt to locate Freilander after discovering that Freilander was on Federal probation; (3) failed to have a defense chemist test the substance and/or failed to request continuance for purposes of such testing after it became obvious that through a mis-

understanding of the scope of the court's order the defense chemist did not perform any tests other than a visual examination with the naked eye; and (4) failed to elaborate on the theory of entrapment by both Freilander and Officer Gadowski.

■■ To support a claim for ineffective assistance of counsel, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. (*People v. O'Neal* (1986), 148 Ill. App. 3d 87, 499 N.E.2d 83, citing *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052.) A reasonable probability is a probability sufficient to undermine confidence in the outcome. (*Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052.) Furthermore, the United States Supreme Court has stated:

"A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance ***." *Strickland v. Washington* (1984), 466 U.S. 668, 689, 80 L. Ed. 2d 674, 694, 104 S. Ct. 2052, 2065.

■ Applying *Strickland* to the instant facts we conclude that there is a reasonable probability that the outcome of defendant's trial was affected by the ineffective assistance of his trial counsel. Defendant testified that Freilander had introduced him to Officer Gadowski (code name Robbin) and had furnished the pills on each occasion. Defendant also testified that Freilander was his sole source of quaaludes and Freilander had threatened to stop providing him with quaaludes unless defendant agreed to pose as the supplier of the pills to Robbin. As a result of his dependency on quaaludes, defendant agreed to deliver the quaaludes to Robbin for Freilander's benefit. By failing to locate Freilander, defense counsel was unable to corroborate defendant's testimony with regard to the entrapment defense.

■ To establish the affirmative defense of entrapment, the evidence must disclose improper inducement on the part of the government and a lack of predisposition to commit the crime on the part of the defendant. (*People v. Norks* (1985), 137 Ill. App. 3d 1078, 484 N.E.2d 1261.) The issue of Freilander's influence over defendant is vital to the resolution of the issue of defendant's predisposition. For example, defendant may have been manipulated into delivering the drugs to Officer Gadowski because he feared that Freilander would

stop providing him quaaludes for personal use. As such, it was improper to present the defense of entrapment without Freilander. As the trial court aptly noted:

"THE COURT: [defense counsel] [A]gain I must comment, if these areas were suggested in a Motion in Limine sometime previous to today, all of these areas would have come to light, I'm sure, and the court would not be in a blind, as it were [sic] to make a determination to rule on the questions of availability, secrecy ***. If the court had that information at the time I would have at least directed the State *** to have [Freilander] on a stand-by and have him available."

Based on the totality of the evidence concerning the presentation of defendant's entrapment defense, we believe that the effect of failing to take reasonable steps to locate Freilander renders the result of the proceeding unreliable under the standard enunciated in *Strickland*.

■ Furthermore, defense counsel's failure to have the defense chemist perform any tests other than a visual examination with the naked eye on the 300 tablets sold to Officer Gadowski amounts to ineffective assistance of counsel. The defense chemist testified that he understood that the court's order allowing him access to the evidence in question limited him to a visual examination. He outlined the testing he would have performed had he not believed himself thus limited. Without a thorough examination of the evidence, the defense chemist's testimony was entirely worthless. Accordingly, we remand this cause for a new trial on the charge of delivery of a controlled substance in excess of 30 grams.

■ ■ Having reached this determination, we find it necessary to only briefly address defendant's two final contentions. First, he contends that he was not proven guilty beyond a reasonable doubt. Suffice it to say that the trial judge's finding that defendant was proven guilty beyond a reasonable doubt is supported by the evidence submitted. Finally, defendant contends that the trial court improperly refused to allow defense counsel the opportunity to personally view Freilander's MEG file. Defense counsel specifically stated at trial:

"Judge, at this time we would ask that the witness produce the file if not for the defense, [sic] for *in camera* inspection as to whether, or not that file does, in fact, contain other things."

The trial court agreed and ordered that the file be produced for *in camera* inspection. After reviewing the MEG file, the court ruled that the file would not be tendered to defense counsel because nothing was found in the file which related in any way to the offense for which defendant was charged. Defense counsel never objected that he should

have been allowed to personally view the file. Indeed, the court viewed the file *in camera* as it had been requested to do by defense counsel. Therefore, because defense counsel failed to object to the *in camera* inspection, this issue is waived on appeal. *People v. Wilder* (1981), 98 Ill. App. 3d 26, 423 N.E.2d 1346.

Accordingly, we reverse and remand for a new trial.

Reversed and remanded.

PINCHAM and MURRAY, JJ., concur.