2021 IL App (1st) 181714-U

No. 1-18-1714

Order filed September 24, 2021

Modified upon denial of rehearing March 11, 2022

Sixth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 04 CR 1788 |
| | ) | |
| BRANDON MCCARTER, | ) | Honorable |
| | ) | Carl B. Boyd, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE ODEN JOHNSON delivered the judgment of the court.
Justices Connors and Mikva concurred in the judgment.

**ORDER**

¶ 1    *Held*: We reverse the trial court's stage two dismissal of defendant's postconviction petition where defendant made a substantial showing that trial counsel was ineffective for failing to call an alibi witness and remand for a third-stage evidentiary hearing. We do not, however, find that trial or appellate counsel was deficient for failing to raise the issue of an alleged violation of defendant's right to a speedy trial.

¶ 2    Following a bench trial, defendant Brandon McCarter was convicted of first degree murder, aggravated kidnapping, armed robbery, aggravated vehicular hijacking, and concealment of a

homicide of Tyree Bias (decedent).[1] He was sentenced to consecutive terms totaling 70 years' incarceration. On direct appeal, defendant's convictions for aggravated vehicular hijacking, armed robbery, and aggravated kidnapping based on armed robbery were reversed and the matter was remanded for resentencing on a "good" aggravated kidnapping count. *People v. McCarter*, 2011 IL App (1st) 092864, ¶ 1.[2] On remand, the trial court reduced defendant's aggregate sentence to 50 years' imprisonment by sentencing him to 10 years on count 12 of aggravated kidnapping. *People v. McCarter*, 2014 IL App (1st) 122167, ¶ 1. We affirmed defendant's convictions and sentences on his subsequent direct appeal in a summary order. *Id.* ¶ 6.

¶ 3    On May 30, 2012, defendant filed a postconviction petition which, the trial court determined, stated an arguable claim of ineffective assistance of counsel and the petition was advanced to second-stage proceedings. Counsel was appointed and filed an amended petition on defendant's behalf. The State's motion to dismiss was granted and this appeal followed.

¶ 4    On appeal, defendant, by and through counsel, contends that trial counsel was ineffective for failing to call an alibi witness. Defendant, by way of a *pro se* supplemental brief, alleges that both trial and appellate counsels were ineffective for failing to argue that his right to a speedy trial had been violated.[3] For the reasons that follow, we reverse the trial court's dismissal of defendant's postconviction petition.

---

[1] Defendant's brother Jamie McCarter was also convicted of decedent's murder. Following a separate jury trial and appeal, we remanded Jamie's conviction with instructions. *People v. McCarter,* 385 Ill. App. 3d 919, 944 (2008).

[2] This case was overruled by our supreme court, holding that the offense of aggravated vehicular hijacking may be committed not only by taking actual physical possession of a vehicle but may also be committed when a defendant exercises control of the vehicle by use of force or threat of force with the victim still present. *People v. Reese,* 2017 IL 120011, ¶ 1.

[3] Defendant's appellate counsel was granted leave to withdraw on defendant's *pro se* motion on March 18, 2021, after briefing of this appeal was complete. Defendant was then granted leave to file a supplemental *pro se* brief.

¶ 5                                      I. BACKGROUND

¶ 6     The underlying factual background comes from this court's recitation on defendant's initial 2009 direct appeal.

¶ 7                                    A.  Trial Proceedings

¶ 8     Defendant was charged in a 14–count indictment with murder (5 counts), armed robbery (1 count), aggravated vehicular hijacking (1 count), aggravated kidnapping (6 counts), and concealment of a homicidal death (1 count). *McCarter*, 2011 IL App (1st) 092864, ¶ 3. The charges arose after the body of decedent was discovered in a burning car in a wooded area in Chicago, Illinois. *Id*.  The following evidence material to this appeal was introduced at trial. *Id*.

¶ 9     Around 6 a.m. on July 8, 2003, Vanessa Jackson (Jackson) was in her car delivering newspapers near the intersection of 137th Street and Wentworth Avenue in Riverdale, Illinois. *Id*. ¶ 4. Jackson observed a dark car parked on a gravel road, blocking her way, causing her to drive around the car. *Id*. She saw three men in the car, one man in each front seat and one man seated behind the driver. *Id*. She later saw two men standing alongside the car. *Id*. One man had a T-shirt pulled up over his head, and the other man was wearing a hooded sweatshirt. *Id*. A few minutes later, Jackson saw the two men running across a field, and about 15 minutes after that, Jackson saw the men at a nearby pay phone. *Id*. Jackson was unable to identify either of the men. *Id*.

¶ 10    At around 6:30 a.m. on July 8, 2003, Officer Reilly responded to a call regarding a brush fire at 136th Street and Wentworth. *Id*. ¶ 5. Tire tracks led north into a wooded area where a black car was found crashed through a fence into the brush. *Id*. The car and the surrounding brush had caught fire. *Id*. The source of the fire was later determined to be the car itself. Decedent's severely burnt body was found in the driver's seat. *Id*.

¶ 11    Later that day, Sergeant Daniel Dempsey (Sergeant Dempsey) met with decedent's girlfriend Lakesha Johnson (Johnson). *Id.* ¶ 6. Johnson admittedly lied to Sergeant Dempsey when she told him that decedent left her house between 7:30 and 8 a.m. that morning. *Id.* After meeting with Johnson, Sergeant Dempsey learned that decedent died of a gunshot wound to the back of the head. *Id.* Sergeant Dempsey reexamined the scene and found a wad of burnt money in decedent's car. *Id.*

¶ 12    On July 15, 2003, Johnson was taken into police custody and questioned about decedent's death. *Id.* ¶ 7. After being in custody for about 72 hours, Johnson gave both a written and videotaped statement to Assistant State's Attorney (ASA) Patrick Enright. *Id.* In her written statement, Johnson told ASA Enright that decedent was a drug dealer. *Id.* She explained that defendant and decedent were rival drug dealers who were not getting along. *Id.* Five days before decedent's murder, defendant told Johnson that he was going to get her a car. *Id.* Defendant said to Johnson, "that if things got bad with decedent when they were going to take what they needed, he was going to take care of business." *Id.* Johnson explained in her written statement that she understood defendant's statements to mean that the defendant was going to shoot decedent and take his money. *Id.* On July 6, Johnson told defendant that decedent was coming home from jail later that day. On July 7, defendant told Johnson, "[i]t's almost time for you to get that car" and "it's going down tomorrow." *Id.* Johnson explained that she understood these statements to mean that defendant was going to rob and kill decedent. *Id.*

¶ 13    In her written statement, Johnson also described what she saw the morning of July 8, 2003. *Id.* ¶ 8. Around 5:15 a.m., decedent left her home. *Id.* About 10 minutes later, Johnson saw decedent pull back into her driveway. *Id.* She then saw defendant's brother, Ernest McCarter (Ernest), park his car in front of her house. *Id.* Defendant and a second brother, Jamie, got out of

Ernest's car and approached decedent's car. *Id.* Jamie was holding a handgun, and defendant was holding what appeared to be a sawed-off shotgun. *Id.* Defendant and Jamie were both dressed in black, hooded sweatshirts. *Id.* Defendant got into the passenger seat of decedent's car and Jamie sat behind decedent, pointing his gun at the back of decedent's head. *Id.* Decedent then backed out of the driveway and drove away. *Id.*

¶ 14    Finally, Johnson's written statement recited the contents of a conversation she had with defendant and Jamie two days after the killing. *Id.* ¶ 9. Jamie said, "did you see that b**** flinch when I shot him" and admitted that he shot decedent in the back of the head while decedent was in the car. *Id.* Jamie also told Johnson that he and defendant placed decedent's foot on the gas pedal, put the car in drive, ran to the park, and went to a pay phone. *Id.* Jamie later altered his story and told Johnson that they were standing outside of decedent's car when he shot decedent. *Id.* Jamie also informed Johnson that he had taken $3,000 from decedent. *Id.*

¶ 15    At trial, Johnson testified that she fabricated the story in her written statement because she was threatened by the police. *Id.* ¶ 10. She was repeatedly impeached by the State with the testimony she gave at Jamie's trial and with her prior statements to the police. *Id.* Johnson's entire written statement to ASA Enright was admitted into evidence without a defense objection. *Id.*

¶ 16    Gerard Jimerson (Jimerson) was also questioned by the police and testified on behalf of the State. *Id.* ¶ 11. At trial, Jimerson acknowledged that after he spoke to an ASA, he was relocated and provided with a month's rent and security deposit. *Id.* On the morning of decedent's death, Jimerson testified that he was awakened at his home on 127th Street by defendant and Jamie. *Id.* Defendant told Jimerson that he had thrown drugs and a gun away while running from the police and needed a ride home, so Jimerson drove defendant and Jamie home. *Id.* Jimerson also testified that a couple of days later, defendant and Jamie were both crying, and defendant told him that "the

hanging come before the catching, and he is not about to do a hundred years in jail." *Id*. Defendant also told Jimerson that before he got caught for murdering decedent, he would kill Jimerson and his family. *Id.*

¶ 17    After being held in custody for several days, Ernest gave the police written and videotaped statements. *Id*. ¶ 12. On direct examination, Ernest testified that defendant and decedent were members of rival gangs that were at war. *Id*. Around 7:30 or 8 a.m. on the morning of decedent's murder, Jimerson, along with defendant and Jamie, arrived at Ernest's house. Ernest testified that Jamie placed a .38–caliber handgun under his mattress. *Id*. Later that day, defendant told Ernest that he got a "trophy", and that decedent was the trophy. *Id*. Upon counsel's prompting, Ernest explained that getting a "trophy" meant that someone from a rival gang had been killed. *Id*.

¶ 18    Ernest also testified that defendant told him about the events surrounding decedent's murder. *Id*. ¶ 13. The version testified to by Ernest, however, differed from the version contained in Johnson's written statement. *Id*. According to Ernest, defendant and Jamie flagged down decedent, who was driving, and convinced decedent to drive them around to look for drugs they lost. *Id*. As they approached a side street in Riverdale, Jamie shot decedent in the back of the head; at which point, defendant and Jamie jumped out of the car as the car sped forward and crashed through a fence. *Id*. Defendant left his shirt in decedent's car, so he jumped the fence initially to retrieve it but instead set the shirt on fire. *Id*. Defendant and Jamie then ran to a pay phone to call Jimerson. *Id*. After which, they walked to Jimerson's house, and he drove them home. *Id*.

¶ 19    On cross examination, Ernest testified that the police promised not to charge him with murder if he agreed to testify against his brothers, defendant and Jamie. *Id.*

¶ 20    The defense did not present any witnesses but cross examined each of the State's witnesses. *Id*. ¶ 14. Ultimately, the trial court found defendant guilty on all charges and imposed consecutive

sentences on each conviction: 35 years for murder, 10 years for armed robbery, 10 years for aggravated vehicular hijacking, 10 years for aggravated kidnapping, and 5 years for concealment of homicidal death. *Id.* ¶ 3. Defendant's direct appeal followed.

¶ 21                                    B. Direct Appeal

¶ 22    On direct appeal, defendant raised six issues: (1) he was not proven guilty of murder beyond a reasonable doubt because the testimonies of the State's witnesses were inconsistent and unreliable; (2) the admission of portions of Johnson's prior inconsistent statement, containing inadmissible hearsay and inadmissible lay witness opinions, as substantive evidence was plain error; (3) he was not proven guilty of armed robbery because the only evidence that a robbery occurred was an inadmissible hearsay statement in Johnson's prior inconsistent statement; (4) he was not proven guilty of aggravated kidnapping because the asportation was incidental to the other crimes allegedly committed; (5)  he was not proven guilty of aggravated vehicular hijacking because no ''taking'' of the victim's car within the meaning of the statute occurred; and (6) concealment of homicidal death was not proven beyond a reasonable doubt because no real concealment occurred and the State failed to prove every allegation of the charge in the indictment. *McCarter,* 2011 IL App (1st) 092864, ¶ 16. This court affirmed the murder and concealment of homicidal death convictions. Id. ¶¶ 32.  However, we found that it was plain error to admit portions of Johnson's prior inconsistent statement to prove that defendant committed armed robbery. Therefore, we vacated defendant's convictions and sentences for armed robbery (*Id*. ¶ 57) and vacated his sentence for aggravated kidnapping that was based on the armed robbery conviction (*Id*. ¶ 69). This court also remanded the matter back to the trial court so that it could proceed on a different aggravated kidnapping count, with a new sentencing hearing on that count if necessary. *Id*. Lastly, we reversed and vacated defendant's conviction and sentence for aggravated vehicular

hijacking as the facts established by the State's evidence failed to prove that decedent was ever dispossessed of his car. *Id.* ¶ 79. Accordingly, defendant's aggregate sentence was reduced to 40 years: 35 years for first degree murder and 5 years for concealment of a homicide. *Id.* ¶ 96.

¶ 23                                    C. Remand and Subsequent Appeal

¶ 24    On remand, defendant was resentenced to 10 years on count 12 of aggravated kidnapping, bringing the total aggregate sentence to 50 years.  We affirmed. *People v. McCarter*, 2014 IL App (1st) 122167-U, ¶ 6.

¶ 25                                    D. Postconviction Proceedings

¶ 26    On May 30, 2012, defendant filed a *pro se* postconviction petition. He alleged that trial counsel was ineffective for failing to move to dismiss for violation of his right to a speedy trial, for failing to call alibi witness Jamie Jones (Jones), defendant's girlfriend, and for failing to investigate other suspects mentioned in police reports. Defendant also made an actual innocence claim based on recantation by one of the State's key witnesses, namely his brother Ernest. Finally, defendant alleged that his appellate attorney was also ineffective for failing to argue that his right to a speedy trial was violated.  Defendant attached an affidavit from Jones, as well as his own affidavit to the petition, in which he averred that he told his attorney that Jones would be willing to testify that he was with her at the time of the murder.

¶ 27    The trial court found that defendant made an arguable claim in fact or law and advanced the petition to the second stage.  Thereafter, appointed counsel filed a 651(c) (Ill. S. Ct. R. 651(c) (eff. Feb. 6, 2013)) certificate and an amended petition arguing that trial counsel was ineffective for failing to call an alibi witness.

¶ 28    On August 25, 2017, the State filed its motion to dismiss defendant's postconviction relief petition, arguing that the trial court should dismiss the petition because: 1) it did not contain a

proper verification affidavit; 2) defendant's claim related to the Speedy Trial Act (725 ILCS 5/103-5(a)(2018) violation was meritless where the record belies the claim; and 3) defendant's claim, related to the alleged failure to call Jones, was meritless where the record showed that defendant specifically stated on the record, upon inquiry from the trial court, that he did not want to pursue an alibi defense at trial.

¶ 29    On July 20, 2018, after argument, the trial court granted the State's motion to dismiss.  In dismissing defendant's postconviction petition the trial court found that: 1) defendant had since provided the required affidavit; 2) defendant's right to a speedy trial was not violated and the Speedy Trial Act was statutory and not constitutional as required by the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2018)); and 3) it would not disturb trial strategy as evidenced by defendant's presence and personal affirmation that he would not pursue the alibi witness.  The trial court subsequently denied defendant's motion to reconsider, and this appeal followed.

¶ 30                              II. ANALYSIS

¶ 31    On appeal, defendant's postconviction counsel contends that defendant made a substantial showing of a constitutional violation that trial counsel provided ineffective assistance of counsel by failing to call an alibi witness at trial.  Defendant then filed a *pro se* supplemental brief alleging that both trial and appellate counsels were ineffective by not only failing to call the alibi witness but also by failing raise the issue of the violation of his constitutional right to a speedy trial.

¶ 32                          A.  Standard of Review

¶ 33    The Act (725 ILCS 5/122-1 *et seq.* (West 2018)) provides a method for an individual seeking to challenge a conviction by alleging that it was the result of a substantial denial of federal or state constitutional rights, or both. "The purpose of a postconviction proceeding is to permit

inquiry into constitutional issues involved in the original conviction and sentence that were not, and could not have been, adjudicated previously on direct appeal." *People v. English*, 2013 IL 112890, ¶ 22. Postconviction proceedings are not a continuation of, or an appeal from, the original case. *People v. Flowers*, 208 Ill. 2d 291, 303 (2003). Rather, a postconviction petition is a collateral attack upon the prior conviction and affords only limited review of constitutional claims not presented at trial. *People v. Greer*, 212 Ill. 2d 192, 203 (2004).

¶ 34     The Act provides a three-stage process for adjudicating petitions. *People v. Cotto*, 2016 IL 119006, ¶ 26. At the first stage, the trial court determines whether the petition is "frivolous or patently without merit." 725 ILCS 5/122-2.1(a)(2) (West 2018). If the petition is not dismissed at first-stage proceedings, it advances to the second stage. *Cotto*, 2016 IL 119006, ¶ 26.

¶ 35     In the second stage of postconviction proceedings, counsel may be appointed for defendant if defendant is indigent. *People v. Rivera, 2016* IL App (1st) 132573, ¶ 19.  After counsel has made any necessary amendments to the petition, the State may either file a motion to dismiss or an answer. 725 ILCS 5/122-4, 5/122-5 (West 2018); *People v. Dupree*, 2018 IL 122307, ¶ 28.  The defendant then bears the burden of making a substantial showing of a constitutional violation. *People v. Pendleton*, 223 Ill. 2d 458, 473 (2006).  A substantial showing as required in the second stage is a measure of the legal sufficiency of the petition's well-pled allegations of a constitutional violation, which if proven at an evidentiary hearing, would entitle petitioner to relief. See *People v. Domagala* 2013 IL 113688, ¶ 35

¶ 36     Since this stage involves a purely legal determination, the inquiry does not require the trial court to engage in any factfinding or credibility determinations. *Dupree*, 2018 IL 122307, ¶ 29. "Unless the petitioner's allegations are affirmatively refuted by the record, they are taken as true, and the question is whether those allegations establish or show a constitutional violation."

*Domagala* 2013 IL 113688, ¶ 35. Therefore, a second stage dismissal is reviewed *de novo*. *Rivera*, 2016 IL App (1st) 132573, ¶ 19. If a substantial showing of a constitutional violation is made, then the petition proceeds to the third stage where the trial court conducts an evidentiary hearing on the merits of the petition. 725 ILCS 5/122-6 (West 2018).

¶ 37                                    B.  Ineffective Assistance

¶ 38    In the case at bar, defendant's postconviction petition was dismissed at the second stage. Defendant argues that he made a substantial showing that his sixth amendment constitutional right to effective assistance of counsel was violated. A defendant's claim of ineffective assistance of counsel is analyzed under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail on such a claim, a defendant must show both that counsel's performance was deficient, and that the deficient performance prejudiced the defendant. *People v. Thomas*, 2017 IL App (4th) 150815, ¶ 10.

¶ 39    To establish deficient performance, the defendant must show that his attorney's performance fell below an objective standard of reasonableness. *Id.* (citing *People v. Evans*, 209 Ill. 2d 194, 219 (2004)). "Effective counsel refers to competent, not perfect representation." *People v. Palmer*, 162 Ill. 2d 465, 476 (1994).

¶ 40    To establish the second prong of *Strickland*, a defendant must show that, but for counsel's unprofessional errors, there is a reasonable probability that the result of the proceeding would have been different. *Thomas*, 2017 IL App (4th) 150815, ¶ 11 (citing *People v. Houston*, 229 Ill. 2d 1, 4 (2008)). A "reasonable probability" has been defined as a probability which would be sufficient to undermine confidence in the outcome of the trial. *Thomas*, 2017 IL App (4th) 150815, ¶ 11. "A defendant must satisfy both prongs of the *Strickland* test and a failure to satisfy any one of the

prongs precludes a finding of ineffectiveness." *Id*., (quoting *People v. Simpson*, 2015 IL 116512, ¶ 35).

¶ 41    The ultimate question of whether counsel's actions support a claim for ineffective assistance of counsel is subject to *de novo* review on appeal. *People v. Max*, 2012 IL App (3d) 110385, ¶ 64.

¶ 42                                    1. Alibi Witness

¶ 43    Defendant first contends that his trial counsel provided ineffective assistance when he failed to call an alibi witness at trial. In support of his arguments on appeal, defendant attached the affidavit of Jones.  According to her affidavit, if called, she would have testified that defendant slept at her home from midnight until 8 a.m. on July 8, 2003.[4]  She would have also testified that defendant and decedent were friends, despite belonging to rival gangs. Finally, she attests that she was never called to testify in court.

¶ 44    In support of his argument, defendant relies on *People v. Cleveland*, 2012 IL App (1st) 101631, ¶ 1, wherein the court found that it was unreasonable for the attorney not to call several alibi witnesses. In that case, this court opined that it was difficult to see how refusing to call several witnesses who could have provided an alibi for the defendant constituted reasonable trial strategy. *Id*. at ¶ 60. See also *People v. King,* 316 Ill.App.3d 901, 916 (2000) (failure to call alibi witness constituted deficient representation where no explanation was offered to support characterization of counsel's inaction as trial strategy). Upon a finding that the defendant made a substantial showing that his constitutional right was violated by defense counsel's failure to investigate fully the possible testimony of exculpatory witnesses, the question of whether the witnesses were truly

---

[4] Defendant's brief states that Jones would have testified that he was with her from 6 p.m. on July 7, 2003, until 9 a.m. on July 8, 2003.

exculpatory and their absence at trial was prejudicial becomes the defendant's burden to prove at a third-stage evidentiary hearing before a circuit court judge as trier of fact. *Id.* ¶ 61.

¶ 45    The State however contends that defendant failed to meet his burden of showing that a substantial violation occurred. The State argues that the record rebuts defendant's claims of ineffective counsel when defendant's trial counsel raised the issue of calling the alibi witness on at least two occasions. On April 24, 2007, counsel stated that he planned to file an affirmative defense of alibi, but on May 15, 2007, counsel informed the court that he no longer planned to present an alibi defense.  Defendant was present in court and specifically confirmed when asked by the court if it was true that he decided not to present the alibi defense. However, defendant states in his reply brief that he only waived an alibi defense because he thought the trial would move quicker. Further, the State argues that defendant's trial counsel continued to disclose the alleged alibi witness in discovery, stating that it was still on the table. The State concludes that these facts prove that trial counsel had done his due diligence.

¶ 46    Whether defense counsel was ineffective for failure to investigate defendant's alibi witness is determined by the value of the evidence that was not presented at trial and the closeness of the evidence that was presented.  *People v. Morris*, 335 Ill. App. 3d 70, 79 (2002). Attorneys have an obligation to explore all readily available sources of evidence that might benefit their clients. *Id.* Defense counsel has a professional obligation, both legal and ethical, to explore and investigate a client's alibi defense. *Id.* It is fundamental that this obligation necessarily requires discussion by defense counsel with the client regarding the alibi defense. *Id.* Failure to conduct investigation and develop a defense has been found to be ineffective assistance. *Id.*; see also *People v. Wright*, 111 Ill. 2d 18 (1986). Additionally, the failure to present available witnesses to corroborate a defense

has been found to be ineffective assistance. *Id*., see also *People v. Solomon*, 158 Ill. App. 3d 432 (1987).

¶ 47    In determining whether a defendant has been denied his right to the effective assistance of counsel, we measure the quality and impact of counsel's representation under the circumstances of the individual case. *Id.* In the case at bar, defendant's ineffective assistance of counsel claim is based on what trial counsel should have done, not on what counsel did. See *People v. Tate*, 2012 IL 112214, ¶ 14.

¶ 48    Here, as noted by the State, the record indicates that trial counsel planned to present an alibi defense, then later stated he would not present an alibi defense, but the alibi defense continued to be disclosed in discovery. Defendant admits that he confirmed during the proceedings that he would no longer assert an alibi defense but stated that he did so only because he thought the trial would move faster. Additionally, Jones' affidavit indicates that she was available to testify for trial and would have testified that not only was defendant with her during the time that the murder was committed, but also that defendant and decedent were best friends. Likewise, defendant's own affidavit averred that he told his attorney that he was with Jones at the time of the murder and that she would be willing to testify. The record does not, however, indicate whether defense counsel interviewed Jones or why she was not called as a witness, when she could have provided a complete alibi for defendant. Instead, the record shows that there were no witnesses presented on defendant's behalf. Although we give counsel deference to make strategic decisions at trial, the record here shows no reasonable strategy that may have been employed by counsel in calling no witnesses and presenting no evidence. *People v. Cleveland*, 2012 IL App (1st) 101631, ¶ 60. Based on the circumstances presented here, we conclude that defendant's postconviction petition has

made a substantial showing that trial counsel's failure to call Jones as a witness was deficient performance to satisfy the first *Strickland* prong.

¶ 49    We now turn our attention to the second prong of the *Strickland* test, namely whether defendant was prejudiced by counsel's failure to call Jones as an alibi witness. To establish prejudice, the defendant must prove that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. *People v. Richardson*, 189 Ill. 2d 401, 411 (2000). A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*

¶ 50    Here, there is no evidence in the record to establish that defense counsel investigated the alibi witness or the reasoning behind counsel's decision not to present the alibi defense. The evidence presented at trial established that decedent's murder occurred in Riverdale between 6 and 6:30 a.m. However, Jones lived in Ford Heights, and her affidavit places defendant at her home until 8 a.m. Additionally, defendant averred that he told defense counsel about Jones and her testimony to support his alibi defense, and also that he only agreed not to pursue the alibi defense because he thought they were proceeding to trial on that day. This information establishes prejudice to defendant as it stands to reason that putting on alibi evidence at the trial would have increased defendant's chances of acquittal. Accordingly, we conclude that defendant's petition satisfies the prejudice prong of the ineffective assistance of counsel claim in the context of the second-stage of the post-conviction process.

¶ 51    We therefore conclude that defendant has made a substantial showing that his constitutional right was violated by defense counsel's failure to present alibi evidence to entitle him to an evidentiary hearing. Whether Jones' testimony is truly exculpatory and her absence at trial prejudicial is the defendant's burden to prove at a third-stage evidentiary hearing before the

trial court as trier of fact. See *Id.* ¶ 61. Accordingly, we reverse the dismissal of defendant's postconviction petition and remand for a third-stage evidentiary hearing.

¶ 52                                                        2. Speedy Trial

¶ 53    Defendant further contends, in his *pro se* supplemental brief, that both his trial and appellate counsels were ineffective for failing to raise the issue of the violation of his right to a speedy trial.  He asserts that he was arrested on December 24, 2003, and in custody continuously through the beginning of his trial on October 18, 2007. He further contends that he first made a written demand for trial on December 27, 2003.

¶ 54    As stated previously, to demonstrate ineffective assistance of counsel, a defendant must establish that his attorney's performance was so deficient that it fell below an objective standard of reasonableness and that defendant was prejudiced by the deficient performance. *Strickland*, 466 U.S. at 687. Counsel's failure to assert a speedy-trial violation cannot establish either prong of an ineffective assistance claim if there is no lawful basis for raising a speedy-trial objection. *People v. Phipps*, 238 Ill.2d 54, 65 (2010) (citing *People v. Cordell*, 223 Ill. 2d 380, 385 (2006)).

¶ 55    Claims of ineffective assistance of appellate counsel are measured against the same standard as those dealing with ineffective assistance of trial counsel. *People v. Childress*, 191 Ill. 2d 168, 175 (2000). A petitioner who contends that appellate counsel rendered ineffective assistance of counsel must show that the failure to raise an issue on direct appeal was objectively unreasonable and that the decision prejudiced petitioner. *Id.* Unless the underlying issue is meritorious, petitioner suffers no prejudice from counsel's failure to raise it on direct appeal. *Id.* Thus, we must determine whether defendant's underlying claim that his statutory right to a speedy trial was violated would have been successful if raised on direct appeal. To do so, we must first determine whether defendant's speedy trial rights were violated.

¶ 56    A defendant possesses both constitutional and statutory rights to a speedy trial. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art.1, sec. 8; 725 ILCS 5/103-5(a) (West 2004). Although Illinois' speedy trial statutes implement the constitutional right, the statutory and constitutional rights are not coextensive. *People v. Phipps*, 238 Ill.2d 54, 65 (2010) (citing *People v. Sandoval*, 236 Ill. 2d 57 (2010)). The U.S. Constitution guarantees a right to a speedy trial but does not set forth the number of days that constitute a speedy trial. U.S. Const., amends. VI, XIV. The Illinois speedy trial statute, codified in the Code of Criminal Procedure (Code), on the other hand, specifies the exact number of days within which a trial must be granted to satisfy the speedy trial requirement. 725 ILCS 5/103-5(a) (West 2004).

¶ 57    Here, defendant alleges that his constitutional right to a speedy trial was violated by the trial court's failure to comply with the statutory number of days that constitute a speedy trial and further that both trial and appellate counsels were ineffective for failing to raise this issue, which satisfies the constitutional claim requirement of a postconviction petition. See *Strickland*, 466 U.S. at 686 (the right to counsel is the right to the effective assistance of counsel).

¶ 58    As noted, the U.S. Constitution does not specify the number of days that constitute a speedy trial. However, pursuant to section 103-5(a) of the Code, when a defendant is held in custody, he must be brought to trial within 120 days from the date he was taken into custody. 725 ILCS 5/103-5(a) (West 2004). That section states, in pertinent part:

> "(a) Every person in custody in this State for an alleged offense shall be tried by the court having jurisdiction within 120 days from the date he or she was taken into custody unless delay is occasioned by the defendant *** Delay shall be considered to be agreed to by the defendant unless he or she objects to the delay by making a written demand for trial or an oral demand for trial on the record.

The 120-day term must be one continuous period of incarceration. In computing the 120-day term, separate periods of incarceration may not be combined. If a defendant is taken into custody a second (or subsequent) time for the same offense, the term will begin again at day zero." 725 ILCS 5/103-5(a) (West 2004).

The 120–day speedy trial period begins to run automatically if a defendant remains in custody pending trial. *People v. Wooddell,* 219 Ill.2d 166, 174 (2006).

¶ 59    Additionally, section 103-5(e) sets forth the speedy trial period in instances where a person is simultaneously in custody for more than one pending charge in the same county or when a person simultaneously demands trial on more than one charge. That section provides as follows:

"If a person is simultaneously in custody upon more than one charge pending against him in the same county, or simultaneously demands trial upon more than one charge pending against him in the same county, he shall be tried, or adjudged guilty after waiver of trial, upon at least one such charge before expiration relative to any of such pending charges of the period prescribed by subsections (a) and (b) of this Section. Such person shall be tried upon all of the remaining charges thus pending within 160 days from the date on which judgment relative to the first charge thus prosecuted is rendered * * * or if such trial upon such first charge is terminated without judgment and there is no subsequent trial of, or adjudication of guilt after waiver of trial of, such first charge within a reasonable time, the person shall be tried upon all of the remaining charges thus pending within 160 days from the date on which such trial is terminated; * * *." 725 ILCS 5/103-5(e) (West 2004).

Accordingly, in this case, section 103-5(e) is the applicable statute for calculating defendant's speedy trial term as he had several pending cases.

¶ 60    The legislative intent behind section 103-5(e) is to preserve a defendant's right to a speedy trial while also mitigating the State's burden of preparing more than one charge for trial. *People v. Raymer*, 2015 IL App (5th) 130255, ¶ 13. Moreover, as has been stated in similar such cases, the speedy-trial clock is tolled in one case when the State changes its original election absent subterfuge. See *People v. Kliner*, 185 Ill. 2d 81, 123-24 (1998); *People v. Thompson*, 2012 IL App (2d) 110396, ¶ 16.

¶ 61    We discussed the application of section 103-5(e) to simultaneously pending cases and provided a summation of *Kliner* and *Thompson* in *People v. Meeks*, 2020 IL App (2d) 180263. In that case, the trial court determined that, upon nol-prossing defendant's 2008 charge, the State had 160 days to bring defendant to trial on his 2009 charges. *Meeks*, 2020 IL App (2d) 180263, ¶ 10. The *Meeks* court found that *Kliner* and *Thompson* were controlling. *Id.*, ¶ 12. In *Kliner*, the supreme court found that the speedy trial clock was tolled in one case when the State changes its original election, absent subterfuge. *Kliner*, 185 Ill. 2d at 123-24. Similarly, in *Thompson*, we found that the speedy trial clock was tolled when the State changed its election, absent subterfuge. *Thompson*, 2012 IL App (2d) 110396, ¶ 16. The *Meeks* court also distinguished *Raymer*, as the 120-day speedy trial term had already expired before the State dismissed the charge it had elected to try first. *Raymer*, 2015 IL App (5th) 130255, ¶ 15.

¶ 62    Further, to prevent the speedy trial clock from tolling, section 103–5 requires defendants to object to any attempt to place the trial date outside the applicable period. See *People v. Cordell*, 223 Ill. 2d 380, 390–91 (2006). The statute does not mandate any "magic words" constituting a demand for trial, but it requires some affirmative statement in the record requesting a *speedy* trial. *Id*. at 391, (quoting *People v. Peco,* 345 Ill.App.3d 724 (2004)).  Section 103–5 places the onus on a defendant to take affirmative action, either oral or written, when he becomes aware that his trial

is being delayed. *Cordell*, 223 Ill. 2d at 391. To show a violation of his speedy trial rights, a defendant must show that he did not cause or contribute to the delays. *People v. Staten*, 159 Ill. 2d 419, 426 (1994). If a defendant is not tried within the statutory period, he must be released from his trial obligations and have the charges dismissed. 725 ILCS 5/103-5(d) (West 2004); *People v. Hunter*, 2013 IL 114100, ¶ 10. The speedy trial statute must be construed liberally in favor of defendant. *People v. Thomas*, 2014 IL App (2d) 130660, ¶ 14.

¶ 63    A defendant is generally charged with delay caused by defense motions, and the defendant is responsible for calling up defense motions for hearing and disposition. *People v. Ladd*, 185 Ill. 2d 602, 608 (1999). Whether delay should be attributed to the defense depends on whether the defendant's actions in fact caused or contributed to a delay. *Id.*  Delay will not be attributable to the defendant from a silent record. *Id.*

¶ 64    In this case, the record reflects that defendant was arrested on December 26, 2003, charged under case number 03 MC 6023836, and the first demand for trial was made on December 27, 2003. On January 22, 2004, the record indicates that indictments were issued for defendant under case number 04 CR 1788 and the case was transferred to the suburban district. As defendant did not post bail, he was held in continuous custody until his trial. The record reflects that defendant's trial began on October 18, 2007. Defendant concedes that prior to February 15, 2005, all continuances were by agreement or attributable to him, thus tolling the speedy trial period until approximately June 2005. Nevertheless, there are several dates that he contends were wrongly attributed to him, thereby resulting in a violation of his right to a speedy trial. We examine each of the contested dates in turn.

¶ 65    On February 15, 2005, defendant's attorney did not appear, and defendant orally informed the court that he did not agree to continue by agreement and that "we were supposed to have went

[*sic*] on agreement that we were demanding trial." The court passed and recalled the case; the record does not specify whether counsel appeared after the recall, nonetheless, the court continued the case for 30 days to March 15, 2005. Defendant wants this continuance attributed to the State because he made a *pro se* demand for trial. However, with his counsel absent, it is highly unlikely that defendant could have proceeded to trial. When a defendant's attorney fails to appear in court at the appointed time, his absence causes a delay attributable to the defendant. *Kliner*, 185 Ill. 2d at 117. As such, this delay was attributable to defendant and did not count against the number days toward a speedy trial. Nevertheless, counsel's absence begs the question of whether counsel was ineffective for failing to appear, thereby causing an unnecessary delay of defendant's speedy trial.

¶ 66    The next continuance that defendant alleges was attributable to the State and should count against the speedy trial period is from January 8 to 11, 2007. On January 8, 2007, the State changed its election to a possession of contraband case. After some discussion, which included defense counsel's statements that he would certainly like to have the contraband matter brought before the same court but would object to a continuance; the court nonetheless denied defendant's demand and continued the case on order of court to January 11, 2007. As the record indicates that defendant's objection to the continuance was denied, these three days are not attributable to defendant.

¶ 67    The next complained-of continuance, January 11 to 24, 2007, we find was by agreement. The trial court had already indicated that the State was allowed to change the election from the murder case to the possession case and denied the defendant's demand over counsel's objection. The court then asked counsel "So, based on my overruling your requested demand, are you going by agreement?" to which defense counsel replied "certainly." This 13-day continuance did not

count against the speedy trial period as it was by defense counsel's agreement. See *Kliner*, 185 Ill. 2d at 116 (continuance was by agreement, this period of time is attributable to defendant).

¶ 68   On January 24, 2007, the trial court denied defendant's trial demand as a result of the election being on the contraband case and not the murder case.  The matter was continued for status to January 29, 2007, by agreement.  Therefore, the delay was attributable to defendant.

¶ 69   On January 29, 2007, defense counsel continued the murder charge by agreement to February 27, 2007, based on the State having elected the contraband matter instead. Counsel acknowledged that defendant was still demanding trial. As such and based on the court's prior admonishment that demand would be denied based on the State's election, the matter was continued by order of court to February 27, 2007. Thus the 30-day delay was attributable to defendant based on counsel's continuation by agreement.

¶ 70   On May 15, 2007, defense counsel made a trial demand. According to the record below, and the State concedes in their brief, the matter was continued on the State's motion to May 24, 2007.  Therefore, those nine days were charged against the State for the speedy trial period.

¶ 71   On May 24, 2007, defendant appeared without counsel, however by agreement outside of court, all of defendant's matters were continued on the State's motion to May 31, 2007, for status. Thus, those eight days were charged against the State.

¶ 72   On May 31, 2007, defense counsel continued the demand for trial. A jury trial date was reserved for June 25, 2007, and all other cases were continued by agreement to June 12, 2007. Thus, those days were charged against the State.

¶ 73   On June 12, 2007, defense counsel again continued the demand for trial.  The State moved to continue the matter to June 19, 2007. Thus, seven more days were charged against the State.

¶ 74    From June 19, 2007, to September 24, 2007, the parties unsuccessfully attempted to resolve the matter, therefore, those 35 days did not count against the speedy trial period. On September 24, 2007, defendant continued his demand for trial and the State moved for a continuance to October 15, 2007. Thus 21 days were charged to the State. Additionally, defense counsel advised the court that he would file his motion for a speedy trial on the issue of a term violation.

¶ 75    On October 15, 2007, defense counsel made oral demand for a speedy trial as required, even though he told the court that he believed that as of October 15, 2007, the speedy trial count was at 85. Defendant's trial demand was denied by the trial court and the matter was continued on the State's motion for three days.

¶ 76    After a careful review of defendant's complained-of delays, we conclude that the record does not support defendant's claim that his speedy trial rights were violated. As noted, most of the complained-of periods were attributable to defendant which tolled the speedy trial period. Others were charged to the State but were within the time limits for a speedy trial. And still others were attributable to the State's change in election, which was well within its right, and once the State did so, the speedy-trial clock in the murder case tolled and as noted above, began anew on the newly elected charge. *Thompson*, 2012 IL App (2d) 110396, ¶ 16 (citing *Kliner*, 185 Ill. 2d at 123-24). Accordingly, we find that defendant's underlying claim of a speedy trial violation is without merit. As defendant's underlying speedy trial violation claim was without merit, it follows then that neither trial nor appellate counsel was ineffective for failing to raise this issue as defendant suffered no prejudice. See *People v. Simms*, 192 Ill. 2d 348, 362 (2000) (a defendant does not suffer prejudice from appellate counsel's failure to raise a meritless claim on appeal); *People v. Logan*, 2011 IL App (1st) 039582, ¶ 34.

¶ 77    Defendant also argues that the State was required to bring him to trial on one of the other offenses within 120 days of his arrest but failed to do so. We decline to address this issue as it is not properly before the court per defendant's notice of appeal (*People v. Smith*, 228 Ill. 2d 95, 105 (2008)) and it does not affect the result of this case (*People v. Brown*, 236 Ill. 2d 175, 195 (2010)). However, we note that defendant is mistaken that the 120-day limitation applied to his circumstance; as stated previously, the applicable speedy trial period was 160 days as defendant had several pending charges. Further, the other offenses noted in the record were not based on the same underlying act, thus the same speedy-trial limitation did not apply to those offenses. *People v. Williams*, 204 Ill. 2d 191, 198 (2003).

¶ 78    III. CONCLUSION

¶ 79    For the foregoing reasons, the judgment of the circuit court of Cook County is reversed where defendant made a substantial showing that trial counsel was ineffective for failing to call an alibi witness. Accordingly, defendant's postconviction petition is remanded for a third-stage evidentiary hearing on the issue of counsel's failure to call an alibi witness. We reject defendant's contention that his trial and appellate counsels were ineffective for failing to raise the issue of a speedy trial violation because the issue was without merit.

¶ 80    Reversed and remanded with directions.